### Richmond

#### PERCELL TALLEY

#### V.

#### GOODWIN BROTHERS LUMBER COMPANY, ET AL.

September 9, 1982.

Record No. 810790.

Present: All the Justices.

Peter M. Sweeny *(Ashcraft & Gerel*, on brief), for appellant.

*Robert C. Metcalf (Newman & Metcalf*, on brief), for appellees.

COCHRAN, J., delivered the opinion of the Court.

On April 17, 1979, Percell Talley suffered an industrial accident when a sliver of wood became imbedded in his right hand while he was working as a laborer for Goodwin Brothers Lumber Company. The wound became infected, and Talley nearly lost his hand. After he attained a plateau of medical improvement, Talley, who had been receiving disability compensation pursuant to an agreement with his employer, was awarded, on the employer's application, a specific disability rating pursuant to Code § 65.1-56. The employer paid Talley the required 37.50 weeks of specific disability compensation based upon 25% functional loss of use of his hand.

When his specific disability payments terminated, Talley filed a change-of-condition application alleging incapacity to engage in his previous occupation.[1] At a hearing conducted on December 22, 1980, the employer's defense was that Talley had refused an offer of selective work. Relying on the October 16, 1980, report of the attending physician, Dr. Daniel N. Kulund, that Talley was "unable to engage in his previous occupation at the sawmill," and the failure of the employer to submit to Dr. Kulund for approval a detailed job description, the hearing commissioner stated in his opinion that the employer had not established a "definite refusal of an offer of selective work within the claimant's physical capabilities." The commissioner awarded Talley compensation to continue during temporary total incapacity. The full Commission, on review, reversed the award, finding in its opinion that Talley had, without justification, refused selective employment offered by the employer.

On appeal, Talley contends that he was justified in refusing an offer of selective employment without the prior approval of his attending physician, or alternatively, that the evidence was insuffi-

[1] Prior to 1975, an employee could not receive further incapacity compensation following payment of compensation for a specific disability. In that year, the General Assembly amended Code § 65.1-56 to allow such further compensation on application of the employee filed within 12 months of the termination of specific disability payments. Acts 1975, c. 446.

cient to support the Commission's finding of unjustified refusal of selective employment.

Talley's contentions focus on events occurring just prior to the hearing on December 22, 1980. On December 16, 1980, Dr. Kulund reported to the employer's insurer concerning Talley's condition. The report, filed by the employer with the Commission on December 18, 1980, concluded with the following paragraph:

> Although Mr. Talley cannot return to his old job at the sawmill, he can certainly do any job that does not involve the use of two good hands. I would not want his hand with the finger sticking out near any machinery, or in work that would involve carrying objects of over ten pounds with both hands, pushing, pulling or climbing.

By letter to Talley of December 16, 1980, signed by W. T. Goodwin, the employer requested that Talley report to work on December 19, 1980, at a specified hourly rate of compensation to perform duties "cleaning up and driving a short bed dump truck." The letter recited the employer's understanding that Dr. Kulund had "advised" that Talley was able to return to work provided he did not get his "bad finger" near machines, did not lift more than 10 pounds and did not do any pushing, pulling or climbing. The letter than stated, "You will not have to push, pull or climb or lift over 10 lbs., and we do not want you to put your bad hand near any machines that would possibly injure your hand." The employer also filed a copy of this letter with the Commission on December 18, 1980.

In support of his contention that the employer's tender of selective employment was invalid as a matter of law, Talley relies on past decisions of the Commission that state or imply that the attending physician must approve a specific job description prior to its being offered to the employee.[2] In its opinion in the present case, however, the Commission acknowledged its requirement of medical approval where the claimant is receiving compensation for temporary total or temporary partial disability. But the Commission implied that the requirement would not be applicable in the present case, one of first impression, where an offer of selective employment was made following a rating for permanent disability.

---

[2] Talley relies on *Thompson v. Masonry Contractors, Inc.*, 56 O.I.C. 314 (1974) and *Sassie v. American Tobacco Company*, 56 O.I.C. 285 (1974).

Here, permanent partial incapacity was uncontested, but the employer raised the refusal of selective employment as an affirmative defense to the employee's application for continued compensation. Nothing in Code § 65.1-63, which defines the consequences of an employee's refusal of selective employment,[3] prohibits its use by the employer as an affirmative defense rather than as a basis for an employer's change-in-condition petition. Thus, the Commission was entitled to consider the tender and refusal of selective employment during the hearing on Talley's application. The employer, acknowledging that it had the burden of persuasion to show that a job offer was tendered within Talley's residual capacity, says that if it carried this burden, the burden of persuasion then shifted to Talley to show that he was justified in refusing the offer of modified work. We agree.

Whether refusal of selective employment is used offensively or defensively, the tender of limited employment must necessarily be based upon informed medical opinion. We will assume, therefore, that prior medical approval is required. As Talley conceded in oral argument, however, where the attending physician has specified the limitations in detail and it is obvious that the proffered job fits these limitations, it may not always be necessary to submit the job description to the physician for what would be merely a "rubber stamp action." *See Ross* v. *Fincastle Country Club, Inc.*, 53 O.I.C. 315 (1971). Talley says this is not such a case. We disagree. The tender of selective employment mirrored the precise physical limitations specified by the attending physician. The Commission reasonably could find as a fact from this evidence that the employer made a valid tender of selective employment.

Talley asserts that the Commission erroneously based its decision on a handwritten notation from Dr. Kulund made on a copy of the employer's letter to Talley offering the selective employment. This document was not placed in the record until some two months after the evidentiary hearing. The notation from Dr. Kulund stated that the job offer "correspond[ed] to the limitations in my Dec. 16, 1980 letter." There is no indication in the record,

[3] Code § 65.1-63 states as follows:

If an injured employee refuses employment procured for him suitable to his capacity, he shall not be entitled to any compensation at any time during the continuance of such refusal, unless in the opinion of the Industrial Commission such refusal was justified.

however, that the Commission relied on Dr. Kulund's post-hearing notation in arriving at its decision. Indeed, the notation was nothing more than confirmation of what was apparent from the language of the physician's report and the employer's job offer.

■ The finding that selective employment had been offered shifted the burden of persuasion to Talley to show that his refusal of the offer was justified, and the Commission stated in its opinion that it could not find from the evidence such justification. Talley relies on the testimony of W. T. Goodwin that the job offered was "practically the same job" Talley had when he was injured. This reliance is misplaced.

The evidence showed that Talley, though illiterate, received the letter offering selective employment and had it read to him five days before the hearing. The letter referred to the limitations imposed by Dr. Kulund and specifically excluded them from the specified duties which Talley would be required to perform on the job. Moreover, at the hearing, counsel for Talley had ample opportunity to inspect both Dr. Kulund's letter and the offer of selective employment as well as to cross-examine Goodwin on the precise nature and limitations of the proffered job. During the hearing, Goodwin testified that the job was "still available for Mr. Talley." While the job undoubtedly would have been similar to Talley's job prior to his injury, the duties had been modified to ensure that Talley would not exceed the limitations placed on his capacity by Dr. Kulund. If Talley did not know before the hearing that the proffered job met Dr. Kulund's requirements, he acquired, or should have acquired, that information at the hearing.

It thus appears that the Commission's finding that Talley failed to show justification for his refusal of selective employment is based upon credible evidence and is therefore binding upon us. *Sky Chefs, Inc.* v. *Rogers*, 222 Va. 800, 805, 284 S.E.2d 605, 607 (1981). Accordingly, we will affirm the decision of the Commission.

*Affirmed.*