**Richmond**

VIRGINIA WAYSIDE FURNITURE, INC., et al.

V.

MICKEY L. BURNETTE

No. 1946-92-2

AND

MICKEY L. BURNETTE

V.

VIRGINIA WAYSIDE FURNITURE, INC., et al.

No. 1960-92-2

Decided September 14, 1993

COUNSEL

Sarah Y. M. Kirby (Mary Louise Kramer, Mary Ann Link; Sands, Anderson, Marks & Miller, on brief), for appellant.

Robert L. Flax, for appellee.

Mickey L. Burnette, *pro se* (Record No. 1960-92-2).

OPINION

**COLEMAN, J.**—In this workers' compensation appeal, we hold that a partially disabled employee can cure an unjustified refusal of selective employment of a job procured by his employer by obtaining other comparable employment. We also hold that the commission erred in calculating the amount of Mickey L. Burnette's temporary partial disability benefits. Accordingly, we affirm the commission's decision to award Burnette disability benefits for partial wage loss but reverse and remand the decision regarding the amount of the award.

On November 17, 1988, Burnette sustained a compensable injury by accident to his left knee while working for Virginia Wayside Furniture, Inc. The commission entered an award of $200 per week for temporary total disability benefits. On May 15, 1990, Burnette's treating physician, Dr. E.L. Clements, Jr., released Burnette to light duty work.

Virginia Wayside retained a counseling service to assist Burnette in finding a replacement job within his physical capability. The counseling service arranged two interviews that resulted in job offers. Dr. Clements approved both job descriptions as being within Burnette's physical capabilities. On June 15, 1990, Quality Bake Shop (Quality) offered Burnette a job as a baker's helper and delivery driver at $3.85 per hour during an initial two-week training period, after which they would increase his wage to $5.00 to $5.50 per hour. Quality scheduled two different starting dates for Burnette, one on June 24, 1990, and the other in early August, 1990. Burnette failed to report to work on either date.

The second job offer was from Colonial Security Service, Inc. as a security guard. The starting wage was $4.25 per hour with an increase to $4.75 per hour after four months. Burnette refused this job offer.

On July 23, 1990, Virginia Wayside filed an application requesting the commission to suspend Burnette's award based on an unjustifiable refusal of selective employment. Following a hearing on November 27, 1990, the deputy commissioner suspended Burnette's award, finding that he had unjustifiably refused suitable selective employment that Quality and Colonial Security Service had offered. The commission affirmed the deputy commissioner's decision on March 28, 1991.

On June 25, 1991, Burnette filed an application to reinstate his disability benefits for partial wage loss on the ground that he had cured

his unjustified refusal by obtaining a suitable job. Burnette had obtained a job, on his own initiative, at Sealey Optical Company beginning July 25, 1990. His starting wage was $5.00 per hour, and he was earning an average weekly wage of $205.01. The deputy commissioner denied Burnette's request for reinstatement of benefits based on a finding that Burnette's acceptance of employment at Sealey Optical at an average weekly wage less than the maximum average weekly wage available at Quality, which was $247.50 per week, did not cure his unjustified refusal of that employment.

On January 30, 1992, Burnette filed a second application for reinstatement of benefits based on a claim that he had cured his prior unjustified refusal of selective employment. He asserts that he had accepted the job offered at Quality and that he had comparable employment. On January 28, 1992, Burnette had sent a letter to Quality accepting its June, 1990, offer of employment. Burnette knew that the job was no longer available; however, he stated that he would have accepted the job had it been available and had it paid as much or more than his job at Sealey Optical. By January, 1991, Burnette's wage at Sealey Optical had increased to $5.45 per hour with an average weekly wage of $218. Burnette also had looked for a higher paying job in the newspaper classified ads once or twice each week but had not applied for any of them.

The deputy commissioner denied Burnette's request for reinstatement of benefits, finding that his offer to accept the Quality job was not made in good faith because he knew that the job was no longer available and his sole purpose in making the futile gesture was to obtain compensation benefits. The commission reversed the deputy commissioner's decision, stating

that the claimant has done all which can reasonably be expected under the circumstances to cure his refusal of light work with Quality Bake Shop. He has applied for work there, even though no work is available. The claimant has found other light work where his earnings fall approximately in the mid-range of his anticipated earnings at Quality Bake Shop.

Virginia Wayside appeals from this decision.

## I.

First, we reject Virginia Wayside's contention that the doctrines of *res judicata* and collateral estoppel barred the commission from considering Burnette's second application to reinstate benefits based on a repeated claim that he had cured refusal of selective employment. The circumstances that were the basis for Burnette's second application differed from the circumstances that he previously had alleged cured his unjustified refusal. In the first application, Burnette alleged a cure by virtue of the fact that he had obtained other light duty employment. In the second application, he alleged a cure by virtue of the fact that he was willing to accept the Quality job and that he was now earning a higher wage at Sealey Optical than that which would have been paid at Quality. Accordingly, new and additional issues were alleged and presented at the second hearing that were not alleged in the first hearing.

## II.

■ In general, an employee who has reached maximum medical improvement and remains partially disabled must make a reasonable effort to market his remaining capacity to work in order to continue receiving workers' compensation benefits. *National Linen Serv. v. McGuinn,* 8 Va. App. 267, 269, 380 S.E.2d 31, 33 (1989). Thus, if an employer procures employment that is suitable for the injured employee's work capacity, and the employee unjustifiably refuses such employment, the employee is no longer entitled to receive disability compensation during the continuance of the refusal. Code § 65.2-510; *Jules Hairstylists, Inc. v. Galanes,* 1 Va. App. 64, 66, 334 S.E.2d 592, 593 (1985); *see also National Linen,* 8 Va. App. at 272 n.5, 380 S.E.2d at 34 n.5 (one factor in determining a reasonable effort to market one's residual work capacity is whether the injured employee cooperated in the employer's efforts to obtain suitable employment for him).

■ When compensation benefits are suspended based on an employee's unjustified refusal of selective employment, benefits may be resumed when the employee ceases his refusal. *Thompson v. Hampton Inst.,* 3 Va. App. 668, 670, 353 S.E.2d 316, 317 (1987). If the employee ceases his refusal by advising his employer that he is willing, in good faith, to accept the offered job or work of like kind, the employee is entitled to a resumption of benefits, even though the procured se-

lective employment is no longer available. *Id.* at 671, 353 S.E.2d at 317.

The question that we decide is whether, even if Burnette did not in good faith offer to accept the job offered him one and one-half years earlier by Quality which was no longer available, the commission erred by holding that Burnette cured his unjustified refusal of selective employment by obtaining other comparable employment. "'The legislative intent [of Code § 65.2-510] is to encourage injured employees to seek selective employment rather than to remain unemployed unless the employer finds such employment for them.'" *Washington Metro .Area Transit Auth. v. Harrison,* 228 Va. 598, 601, 324 S.E.2d 654, 656 (1985) (quoting *Big D Quality Homebuilders v. Hamilton,* 228 Va. 378, 382, 322 S.E.2d 839, 841 (1984)). Consequently, if the employer does not procure selective employment for the injured employee, the employee must make a reasonable effort to market his remaining work capacity in order to be entitled to continue receiving disability benefits. *See National Linen,* 8 Va. App. at 269, 380 S.E.2d at 32 (employer did not offer disabled employee selective employment). Under the holdings in *National Linen* and *Thompson,* it logically follows that if disability benefits are suspended because an employee unjustifiably refuses selective employment offered by the employer, the employee, nevertheless, will be entitled to a resumption of disability benefits once he has procured comparable employment suitable for his disability or has made a good faith effort to obtain suitable employment.

Whether an employee has made a reasonable effort to market his remaining work capacity is determined by an objective standard of reasonableness and depends on the particular circumstances of each situation. *National Linen,* 8 Va. App. at 270-72, 380 S.E.2d at 33-34. In the present case, we hold that the commission did not err in finding that Burnette had cured his prior unjustified refusal of the suitable employment by obtaining comparable employment and, thereby, had marketed or made a reasonable effort to market his residual capacity. The job that Burnette obtained with Sealey was at a wage less than that offered by Quality Bake Shop; therefore, a portion of the wage loss that Burnette would have been experiencing was due not to the disability to work caused by the accident, but by his unwillingness to accept an o'ffer of suitable employment. However, the wage that Burnette now earns with Sealey Optical falls within the mid-range of the projected starting wage with Quality after Burnette's training period. Thus, by obtaining employment at a wage that is comparable to

that which was offered him, he has cured his unjustified refusal of the selective employment that was offered him.

We affirm the commission's decision that Burnette is entitled to a resumption of temporary partial disability benefits. We need not decide whether Burnette also may have cured his unjustified refusal by making a good faith acceptance of the job offered one and one-half years earlier at Quality which was no longer available.

## III.

The commission erred in calculating Burnette's award of temporary partial disability benefits by applying an average weekly wage at Sealey Optical of $205.01. The record clearly shows that at the time of the hearing, Burnette was earning an average weekly wage of $218 at Sealey Optical. Therefore, the wage differential on which to calculate the loss resulting from the disability should have been based on a $218 average weekly wage rather than $205.01. Thus, we reverse the commission's award and remand for further proceedings to recalculate the award based on Burnette's pre-injury wage of $300 per week and his current average weekly wage of $218.

*Affirmed in part,*
*reversed in part and remanded.*

Willis, J., and Elder, J., concurred.