COURT OF APPEALS OF VIRGINIA


Present: Chief Judge Fitzpatrick, Judge Annunziata and
         Senior Judge Overton


NEWPORT NEWS SHIPBUILDING AND
 DRY DOCK COMPANY
                                        OPINION BY
v.    Record No. 3235-01-1      JUDGE ROSEMARIE ANNUNZIATA
                                      AUGUST 20, 2002
STEVEN J. LAWRENCE


          FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

              (Jonathan H. Walker; Mason, Cowardin & Mason,
              on brief), for appellant.  Appellant
              submitting on brief.

              No brief or argument for appellee.


     The Workers' Compensation Commission, on review of a deputy

commissioner's decision, awarded Steven J. Lawrence temporary

partial disability benefits, suspended from September 22, 1999

until September 12, 2000.  Newport News Shipbuilding and Dry

Dock Company (employer) appeals the commission's award of

benefits after August 24, 1999, contending Lawrence

unjustifiably refused selective employment on that date and

failed to timely cure that refusal.  For the reasons that

follow, we affirm.

## I. Background

Lawrence injured his left knee while working for employer on February 23, 1987. Thereafter, he was restricted from climbing, kneeling, squatting, and standing for more than four hours.

Lawrence began vocational testing in a vocational placement program on August 24, 1999. The evidence proved that Lawrence arrived twenty minutes late for testing on that date; his tardy arrival disrupted other members of his class. On one of the tests, he did nothing but fill in his name. He also failed to complete another test and refused an offer of a second opportunity to complete the tests. Lawrence also insisted on tape recording the class, despite the instructor's direction not to do so and refused to turn his tape recorder off when requested. He also disrupted class by questioning the credentials of several staff members.

After the first class, Lawrence attended the vocational rehabilitation classes sporadically. He was often late. He failed to attend class on September 1, 1999 and September 3, 1999, and arrived more than two hours late to class on September 2, 1999. Other members of the class voiced complaints about Lawrence's disruptions.

On September 7, he attended class dressed inappropriately for an interview that had been scheduled for him. In addition, he did not attend the interview and failed to offer an

explanation.  Between September 7 and September 22, Lawrence continued to arrive late for appointments, failed to follow up on job leads, and failed to attend other interviews.

The deputy commissioner found that Lawrence "unjustifiably refused vocational rehabilitation offered by the employer in August and September of 1999."  He held that Lawrence cured this refusal by securing selective employment on March 7, 2000.  Because the deputy commissioner found that Lawrence's refusal was cured, he awarded Lawrence temporary partial disability, suspended from September 22, 1999 until September 12, 2000.

The full commission affirmed, noting that the "deputy commissioner's decision that the claimant refused vocational rehabilitation was based on a series of acts that ended on September 22, 1999."  On that ground, it found "no error in the deputy's decision to suspend benefits as of September 22, 1999."

The commission also held that the six-month period for curing a refusal of selective employment under Code § 65.2-510 begins when the employer files its application for hearing.  The employer filed its application on October 19, 1999.  It held, therefore, that had Lawrence's refusal occurred on August 24, 1999, his cure was timely.

## II. Analysis

### A. Calculation of Time to Cure Refusal

The commission found that Lawrence constructively refused selective employment by failing to cooperate throughout his vocational rehabilitation program, beginning on August 24, 1999 and continuing through September 22, 1999. Reasoning that Lawrence's refusal of selective employment culminated on September 22, 1999, the commission suspended benefits on that date, making it "the last day for which compensation was paid before suspension." Code § 65.2-510(C). Pursuant to the code, the commission calculated the cure period from that date. See id. (providing that an unjustified refusal of suitable employment may be cured within six months "from the last day for which compensation was paid before suspension"). It concluded, therefore, that when Lawrence obtained employment on March 7, 2000, less than six months from September 22, 1999, he cured his refusal to obtain selective employment. Alternatively, the commission found that the cure period began on October 19, 1999, the date the employer filed its application, such that Lawrence cured his refusal by obtaining employment on March 7, 2000.

The employer claims that the commission should have suspended Lawrence's benefits on August 24, 1999, the date, it contends, that Lawrence began to constructively refuse employment. The employer argues, therefore, that Lawrence's

opportunity to cure his unjustified refusal began on August 24. See id. We disagree and affirm the decision of the commission.

An injured employee who refuses employment suitable to his capacity is not entitled to any compensation during the period of refusal unless the refusal is justified. Code § 65.2-510(A). "'An employer seeking to terminate compensation benefits based on refusal of selective employment must establish "(1) a bona fide job offer suitable to the employee's capacity; (2) procured for the employee by the employer; and (3) an unjustified refusal by the employee to accept the job."'" Gallahan v. Free Lance Star Publ. Co., 37 Va. App. 114, 117, 554 S.E.2d 685, 686 (2001) (quoting Hillcrest Manor Nursing Home v. Underwood, 35 Va. App. 31, 37, 542 S.E.2d 785, 788 (2001) (quoting Ellerson v. W.O. Grubb Steel Erection Co., 1 Va. App. 97, 98, 335 S.E.2d 379, 380 (1985))). The employee has an opportunity to cure his unjustified refusal of suitable employment within six months "from the last day for which compensation was paid before suspension." Code § 65.2-510(C). If he fails to do so, his benefits shall terminate beginning on the date he refused the offer of employment. Id.

We have held that "an employee's unjustified refusal to cooperate with placement efforts of the employer is tantamount to an unjustified refusal of selective employment under Code § 65.1-63 [now Code § 65.2-510]." James v. Capitol Steel Construction, 8 Va. App. 512, 515, 382 S.E.2d 487, 489 (1989);

- 5 -

accord UPS v. Godwin, 14 Va. App. 764, 767, 418 S.E.2d 910, 912 (1992) ("An unjustified refusal to attend an interview or an employee's refusal to cooperate at an interview may constitute an unjustified refusal of employment."); Johnson v. City of Clifton Forge, 9 Va. App. 376, 378, 388 S.E.2d 654, 655 (1990) (en banc) (failure to keep interview suitable for employment, or unreasonable behavior during such an interview may constitute an unjustified refusal (citing Jules Hairstylist, Inc. v. Galanes, 1 Va. App. 64, 344 S.E.2d 592 (1985))). In the case before us, we hold that the commission may properly base its conclusion that an employee has constructively refused employment on a course of conduct. See Kachinski v. Workmen's Compensation Appeal Board, 532 A.2d 374, 380 (Penn. 1987) (holding that employee's failure to pursue job referrals procured by employer provides reason to terminate disability benefits); Joyner v. District of Columbia Dep't of Employment Svcs., 502 A.2d 1027, 1031 (D.C. 1986) (same). Furthermore, the commission may suspend benefits and calculate the claimant's cure period at the culmination of that course of conduct.

Whether an employee's failure to cooperate with an employer's rehabilitative efforts constituted a refusal of employment is a question of fact to be determined from the totality of the evidence. UPS, 14 Va. App. at 767, 418 S.E.2d at 912; Pettiford v. S & K Famous Brands, Inc., VWC 144-57-87 (1992) (concluding from the totality of the circumstances that

- 6 -

claimant's failure to attend meetings with rehabilitation counselor and failure to follow up on various job leads constituted a refusal of selective employment). Accordingly, the commission's resolution of this issue, "if supported by credible evidence, [is] conclusive and binding on this Court." Allen & Rocks, Inc. v. Briggs, 28 Va. App. 662, 672, 508 S.E.2d 335, 340 (1998). Evidence to the contrary in the record "is of no consequence if there is credible evidence to support the commission's findings." Russell Loungewear v. Gray, 2 Va. App. 90, 95, 341 S.E.2d 824, 826 (1986).

In this case, the commission held that the totality of Lawrence's behavior between August 24, 1999 and September 22, 1999 constituted an unjustified refusal of selective employment. Although the commission considered evidence of Lawrence's failure to pursue job leads provided by his employer on September 22, 1999, his failure to attend an interview arranged by his employer on September 7, 1999, and his numerous interruptions throughout the vocational rehabilitation program, it did not find that any single act constituted a refusal of selective employment. Rather, the commission calculated Lawrence's cure period beginning on September 22, 1999, implicitly finding that the totality of Lawrence's behavior throughout the period demonstrated his unwillingness to cooperate with his employer's rehabilitative efforts. See James, 8 Va. App. at 517, 382 S.E.2d at 490 (upholding

- 7 -

commissioner's determination that claimant unjustifiably refused to cooperate with rehabilitation efforts based on a series of acts and omissions by the claimant, which demonstrated his unwillingness to cooperate).  Because the totality of Lawrence's behavior from August 24 through September 22 constituted an unjustifiable refusal of selective employment, we find no error in the commission's determination to suspend benefits and calculate Lawrence's cure period at the culmination of this period.[1]  Accordingly, we do not disturb the commission's award on this ground.

### B.  Marketing Residual Capacity

The employer claims the evidence was insufficient to support the commission's finding that Lawrence made reasonable efforts to market his remaining work capacity and that its decision to award benefits to Lawrence should be reversed. Specifically, the employer argues that the commission's reliance on Lawrence's testimony was error because, as the commissioner noted, his "exaggerations and misstatements demonstrate his repeated willingness to misrepresent facts to pursue a benefit." We disagree.

> [I]n deciding whether a partially disabled employee has made reasonable effort to find suitable employment commensurate with his abilities, the commission should consider

---

[1] Because we find that the cure period was properly calculated from September 22, 1999, we need not address the commission's alternative holding that the cure period began on the date the employer filed its application.

such factors as: (1) the nature and extent of employee's disability; (2) the employee's training, age, experience, and education; (3) the nature and extent of employee's job search; (4) the employee's intent in conducting his job search; (5) the availability of jobs in the area suitable for the employee, considering his disability; and (6) any other matter affecting employee's capacity to find suitable employment. The commission, of course, determines which of these or other factors are more or less significant with regard to the particular case.

National Linen Service v. McGuinn, 8 Va. App. 267, 273, 380 S.E.2d 31, 34-35 (1989).

In this case, the commission found that Lawrence's testimony about his marketing efforts and employment history during the period in question satisfied the requirements of McGuinn. The commission took Lawrence's lack of credibility into consideration, but gave greater weight to his employment history, which corroborated his testimony regarding the marketing efforts he made. Therefore, the commission accepted his testimony on this issue, although rejecting his testimony on several others. Such reliance was within the discretion of the commission and did not constitute error. See Street v. Street, 25 Va. App. 380, 387, 485 S.E.2d 655, 668 (1997) (en banc) ("It is well established that the trier of fact ascertains a witness' credibility, determines the weight to be given to their testimony, and has the discretion to accept or reject any of the witness' testimony." (citation omitted)). Accordingly, the

evidence, including Lawrence's testimony regarding his employment efforts and his employment history, supports the commission's determination that Lawrence adequately marketed his residual capacity, and we will not disturb its decision on this ground.

                                                    Affirmed.