COURT OF APPEALS OF VIRGINIA


Present:  Judges Frank, Kelsey and Senior Judge Willis
Argued at Chesapeake, Virginia


BRENDA O. CLEMENTS
                                          OPINION BY
v.   Record No. 2161-02-1          JUDGE ROBERT P. FRANK
                                          APRIL 1, 2003
RIVERSIDE WALTER REED HOSPITAL AND
 RECIPROCAL OF AMERICA


           FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

              Matthew H. Kraft (Chanda W. Stepney; Rutter,
              Walsh, Mills & Rutter, on brief), for
              appellant.

              Karen A. Gould (Angela C. Fleming; Crews &
              Hancock, on brief), for appellees.


     Brenda O. Clements (claimant) appeals from a decision of

the Workers' Compensation Commission (commission) which granted

her employer's application for termination of her temporary

partial disability compensation award.  She claims she did not

unjustifiably refuse the light-duty job offer of Riverside

Walter Reed Hospital (employer).  She also contends her work

with Mary Kay Cosmetics constituted sufficient marketing of her

residual work capacity.  Finally, claimant argues employer

implicitly conceded claimant was totally disabled, thereby

entitling her to temporary total disability payments during the

time she was on sick leave from work.  For the reasons stated

below, we reverse and remand for further consideration by the commission.

## Background

Claimant began working for employer as a registered nurse in the hospital's emergency room in 1978. She had a compensable workplace injury in 1998. The commission awarded her temporary total disability, which was later changed to temporary partial disability. Her medical records indicated she could not do any heavy lifting or spend significant amounts of time standing. Claimant returned to work, although at a different job and with reduced hours. Initially, she performed secretarial work, but eventually she was placed in the cardiac rehabilitation unit of the hospital in a temporary, part-time position. However, employer continued to classify claimant as a full-time employee and to provide claimant with the same benefits she had received while working full time, even though she now worked half her previous hours. According to testimony from employer's director of human resources, claimant earned, on average, $410 every two-week pay period while working in the cardiac unit.[1]

Approximately two and a half years after the accident, employer decided to offer claimant a "permanent part-time position," which amounted to her current job with fewer

---

[1] On brief, employer claims claimant earned $370 per week in this position.

- 2 -

benefits. If she accepted the job, then the sick leave and vacation time that claimant had accrued in the twenty-plus years she had worked for employer would be forfeited without compensation.[2] At the time, claimant carried the maximum amount of sick leave allowed by employer, worth approximately $14,000.[3] She refused the offered position, and employer applied to the commission on April 3, 2001 for the termination of benefits based on an unjustified "refusal of light duty work."

Although employer suggested claimant would no longer have a job if she refused the new position, claimant was allowed to take sick leave and vacation time as of March 30, 2001. Claimant gave employer a Medical Certification Statement signed by her doctor, as required by employer's sick leave policy. The Statement did not indicate claimant was totally disabled. To

---

[2] Kent Taylor, the director of human resources for employer, initially testified, "When an individual changes from full-time to part-time status, they lose their sick leave that they had accrued on the books." He later explained, "She [would] lose sick leave, she [would] lose life insurance, but we indicated in that letter we would hold her sick leave for approximately one year in case she goes into a full-time position, that that would be reinstated." No testimony ever indicated that claimant would be able to take a full-time job in the future nor that employer would consider her for a full-time job within the one-year grace period. Employer had no jobs available that met claimant's medical restrictions in the six months after her refusal to accept the "new" permanent, part-time position.

[3] The record does not indicate whether these benefits were vested and realizable or non-vested. However, employer never contradicted the $14,000 value. Additionally, when she turned down the job offer, claimant was allowed to use the entirety of these benefits.

the contrary, her doctor simply noted that claimant could not "do heavy lifting or overhead work."[4]

Employer paid claimant for seventy-two hours of work for each two-week pay period from April until November 17, 2001, when claimant's sick leave and vacation time ran out. During that time, employer gave claimant a raise in her base pay. In November, although claimant indicated a desire to return to work, employer did not have any positions available that fit within her doctor's restrictions.

While working for employer in 1997, claimant began selling Mary Kay Cosmetics products. In 2000, she reached the position of "director," which involved overseeing a sales force of at least thirty people and carrying an inventory of over $10,000 worth of products. She received a commission for her own sales and the sales of the people working under her. However, because she could not manage the requirements of the position and her work for employer, she gave up the directorship.

While on sick leave, claimant again increased her involvement with Mary Kay. While her first few months of income were inconsistent, by August 2001 claimant was averaging over

---

[4] Claimant never filed a change-of-condition claim alleging she was now totally disabled.

- 4 -

$400 a month.[5]  She regained her "director" status in December 2001.

The deputy commissioner heard testimony on January 22, 2002 and accepted numerous exhibits.  The deputy commissioner found claimant refused the "permanent part-time position" only because she "would lose some benefits."  He concluded he did "not feel this was a justifiable reason to refuse."  He also found claimant did not market her remaining work capacity.

The full commission affirmed the deputy's ruling.  The commission found:

> It is clear that the claimant turned down the permanent job due [to] a loss of some benefits which she had been mistakenly receiving through hospital error.  We find that the loss of benefits is not a valid reason to turn down an offer of selective work and therefore the claimant's refusal was not justified.  We further find that the claimant failed to prove that she cured her refusal within the six-month timeframe from the last day for which compensation was paid.  See [Code] § 65.2-510(C).  The claimant's employment with Mary Kay Cosmetics is not comparable employment and is insufficient evidence of a cure.
>
> *     *     *     *     *     *     *
>
> Moreover, we reject the claimant's arguments that the claimant's receipt of medical leave stays the six-month period for curing a refusal of light duty, or provides a basis

_____

[5] In April 2001, claimant made $133.30; in May, $19.98; in June, $138.27; and in July, $57.65.  Starting in August 2001, claimant made significantly more money.  In August, she received $484.07; in September, $432.54; in October, $380.84; and in November, $410.39.

for an award of temporary total disability. The hospital's decision to allow the claimant to use her leave has no bearing on our decision here and we find that the Act does not provide for a stay of the six-month period during payment of a fringe benefit.

## Analysis

Employer petitioned the commission for a change of condition based on claimant's unjustified refusal to accept a job offer. Under Code § 65.2-510:

A. If an injured employee refuses employment procured for him suitable to his capacity, he shall only be entitled to the benefits provided for in §§ 65.2-503 and 65.2-603 . . . during the continuance of such refusal, unless in the opinion of the Commission such refusal was justified.

B. If an injured employee cures his unjustified refusal by accepting employment suitable to his capacity at a wage less than that originally offered, the employer shall pay or cause to be paid to the injured employee during his partial incapacity pursuant to § 65.2-502, a weekly compensation equal to 66 2/3 percent of the difference between his average weekly wages before his injury and the average weekly wage the employee would have earned by accepting the original proffered light duty employment.

C. A cure of unjustified refusal pursuant to subsection A may not be established if the unjustified refusal lasts more than six months from the last day for which compensation was paid before suspension pursuant to this section; however, the six-month period may be extended by the number of days a claimant is totally disabled if the disability commenced during such six-month period.

An employer bears the burden initially to prove a claimant unjustifiably refused a job.  Westmoreland Coal Co. v. Russell, 31 Va. App. 16, 20, 520 S.E.2d 839, 841 (1999).  An employer must establish "'(1) a bona fide job offer suitable to the employee's capacity; (2) procured for the employee by the employer; and (3) an unjustified refusal by the employee to accept the job.'"  Hillcrest Manor Nursing Home v. Underwood, 35 Va. App. 31, 37, 542 S.E.2d 785, 788 (2001) (quoting Ellerson v. W.O. Grubb Steel Erection Co., 1 Va. App. 97, 98, 335 S.E.2d 379, 380 (1985)).  Once an employer has established these elements, the burden then shifts to the claimant to "show justification for refusing the offer."  Ballweg v. Crowder Contracting Co., 247 Va. 205, 209, 440 S.E.2d 613, 615 (1994). Claimants can cure unjustifiable refusals of selective employment by marketing their residual work capacity.  Code § 65.2-510(B); Virginia Wayside Furniture, Inc. v. Burnette, 17 Va. App. 74, 76, 435 S.E.2d 156, 157 (1993).

The commission must examine the totality of evidence offered on these issues.  See Newport News Shipbuilding and Dry Dock Co. v. Lawrence, 38 Va. App. 656, 662, 568 S.E.2d 374, 377 (2002) (noting that, when determining whether an employee refused employment, the commission determines this fact "from the totality of the evidence").  We will not disturb the commission's findings, even if the record includes contradictory evidence, so long as credible evidence, or reasonable inferences

- 7 -

from that evidence, supports the commission's findings. Hillcrest Manor Nursing Home, 35 Va. App. at 34, 542 S.E.2d at 787; Food Lion, Inc. v. Lee, 16 Va. App. 616, 619, 431 S.E.2d 342, 344 (1993).

### A. Refusal of Selective Employment

The commission found claimant turned down employer's job offer because she would lose "some benefits which she had been mistakenly receiving through hospital error." The commission concluded, "the loss of benefits is not a valid reason to turn down an offer of selective work and therefore the claimant's refusal was not justified." In this case, the commission made incomplete evidential findings and erred in its legal analysis.

While the evidence proved claimant refused the offer of permanent, part-time employment in part because her benefits package would be reduced, claimant also discussed the loss of the benefits she had already accrued. The evidence proved claimant would lose approximately $14,000 in sick leave and vacation time she had earned over the more than twenty years she worked for employer. While the hospital "mistakenly" allowed her to continue to accrue full-time benefits when she began working part-time after her compensable injury in 1998, a significant portion of the $14,000 of leave was earned while she worked full time. Additionally, while for two years claimant received a benefit that employer's policies did not provide for

- 8 -

part-time employees, employer had never argued she was not entitled to the benefits she accrued through their mistake.

If claimant had accepted the permanent, part-time job, she would have received no compensation for this accrued benefit. Instead, she was allowed to use the sick leave and vacation time to receive a full-time salary for over seven months after her refusal of the job.[6] The commission's opinion ignores these facts and instead mentions only the loss of future benefits to which claimant was not entitled. The commission erred in failing to weigh and analyze claimant's argument that her entitlement to the previously accrued benefits justified her refusal of the permanent, part-time position offered by employer.

Additionally, the commission's opinion suggests, even if the accrued leave benefits were considered, the loss of benefits could never constitute justification for refusal of selective employment. We disagree with this legal conclusion.

We have explained previously that determining whether legitimate justification for refusing selective employment exists involves consideration of numerous, varied factors.

> To support a finding of justification to
> refuse suitable selective employment, "the
> reasons advanced must be such that a

---

[6] The record suggests claimant continued to work for employer after employer filed for the change of condition. However, the commission did not discuss, nor did counsel argue, this point. Therefore, we will not address it here.

> reasonable person desirous of employment
> would have refused the offered work."
> [Johnson v. Virginia Employment Comm'n , 8
> Va. App. 441, 452, 382 S.E.2d 476, 481
> (1989).]  Furthermore, the determination of
> justification to refuse employment involves
> "a much broader inquiry than merely
> considering whether the intrinsic aspects of
> the job are acceptable to the prospective
> employee."  Id. at 447, 382 S.E.2d at 478.
> Justification to refuse an offer of
> selective employment "may arise from factors
> totally independent of those criteria used
> to determine whether a job is suitable to a
> particular employee." Id.

Food Lion, Inc., 16 Va. App. at 619, 431 S.E.2d at 344.

Justifiable reasons for refusing a job vary and can be unrelated to the ability to perform the work.  See Ballweg, 247 Va. at 209, 440 S.E.2d at 615 (noting the commission has accepted various economic reasons for refusing employment that are unrelated to job performance); DePaul Medical Ctr. v. Brickhouse, 18 Va. App. 506, 508, 445 S.E.2d 494, 495 (1994) (noting "it is impossible to anticipate and legislate every potential event" that justifies refusal of selective employment).  In the proper context, a claimant could prove that denial of or a change in benefits would lead a reasonable person to refuse the offered work.

On remand, the commission must consider the totality of the evidence and determine whether claimant unjustifiably refused selective employment.

B.  Cure within Six Months of Last Disability Payment

The commission found claimant did not cure her refusal of selective employment.  If the commission determines on remand that claimant unjustifiably refused employer's job offer, then it must address this issue again.  Therefore, we address the commission's ruling on cure.

The commission found, "During the six months after April 3, 2001, the claimant never advised [employer's agent] that she was willing to take the permanent part-time position at the hospital."  While some evidence contradicts this factual finding, the record does contain testimony that claimant did not indicate to the hospital after April 3 that she was willing to accept either the originally offered position or any other appropriate job from employer.  We will not disturb this finding on appeal.  See Hillcrest Manor Nursing Home, 35 Va. App. at 34, 542 S.E.2d at 787.

The commission also found claimant did not cure her refusal by working with Mary Kay Cosmetics, explaining that employment was "not comparable employment and is insufficient evidence of a cure."  The commission did not explain this ruling further.

If claimant unjustifiably refused the selective employment offered her, her disability benefits do not cease permanently. If she can cure her refusal, then she is entitled to reinstatement of those benefits.  See id. at 36-37, 542 S.E.2d at 788; Food Lion, Inc. v. Newsome, 30 Va. App. 21, 25, 515

- 11 -

S.E.2d 317, 319 (1999).  She can also partially cure her refusal.[7]  See Code § 65.2-510(B); Hillcrest Manor Nursing Home, 35 Va. App. at 37, 542 S.E.2d at 788.

A claimant can cure an unjustified refusal in several ways. She can continue working for the employer.[8]  See id. at 39, 542 S.E.2d at 789 ("Likewise, continued part-time, selective employment, with [employer], following the full-time offer, constituted a partial cure of her prior unjustified refusal of such employment . . . .").  Reasonable efforts to market an employee's residual capacity can also cure an unjustified refusal of selective employment.  Cf. Greif Cos. v. Sipe, 16 Va. App. 709, 715, 434 S.E.2d 314, 318 (1993) ("A disabled employee with residual marketable capacity who claims benefits . . . must prove that he or she has made a reasonable attempt to procure work . . . .");  Nat'l Linen Service v. McGuinn, 8 Va. App. 267, 269, 380 S.E.2d 31, 33 (1989) ("Code § 65.1-63 [recodified at Code § 65.2-510] . . . clearly require[s] a disabled employee to make a 'reasonable effort' to market his remaining work capacity in order to receive continued workers' compensation benefits.").  Finding other, comparable employment

---

[7] Claimant has never argued that she partially cured her refusal.

[8] Claimant did not argue that she continued to work for employer while on sick leave and thereby cured any unjustified refusal.

can cure a refusal as well.  See Virginia Wayside Furniture, Inc., 17 Va. App. at 76, 435 S.E.2d at 157 ("[A] partially disabled employee can cure an unjustified refusal of selective employment . . . by obtaining other comparable employment."); Food Lion, Inc., 30 Va. App. at 25-26, 515 S.E.2d at 319 ("Code § 65.2-510 allows employees to cure an unjustified refusal of selective employment by obtaining equivalent selective employment.").

The commission found claimant's employment with Mary Kay was not comparable work.  The record supports that conclusion. At most, the evidence indicates claimant earned half the amount of her salary from employer with her new job.  Nothing in the record suggests claimant did anything else to market her residual capacity.  "[T]he mere fact that the employee obtained a new job, where the pay is substantially less than that received at the old job, is, standing alone, insufficient proof of making a reasonable effort to market one's remaining work capacity."  Nat'l Linen Service, 8 Va. App. at 268, 380 S.E.2d at 32.

As the evidence supports the commission's finding, we will not disturb this factual finding on appeal.  Claimant, therefore, did not cure her refusal within the six months from the last day employer claims she was paid disability benefits.

C.  Entitlement to Temporary Total Disability

Claimant also argues employer "acknowledged" her total disability when it accepted the Medical Certification Statement that supported her request for sick leave and, thereby, admitted she was entitled to an award of temporary total disability during the period she took leave.[9]  Employer argues that allowing claimant to use her sick leave and thereby continue to receive income from employer does not implicitly concede she was totally disabled at that time.  We agree with employer.

The evidence does not suggest employer required employees to be totally disabled under the Workers' Compensation Act before they could use their sick leave or vacation time.  Simply allowing claimant to use her accrued benefits was not an admission that she was totally disabled for purposes of a workers' compensation award.

Additionally, acceptance of the Medical Certification Statement did not constitute implicit acceptance of claimant's total disability claim.  The form, although it lists several

---

[9] On brief, claimant also argues employer is estopped from claiming April 3, 2001 as the beginning of the six month period for cure because employer provided her with a full-time salary during that period.  As this argument is not part of the Questions Presented that were designated for appeal, we will not address this issue.  See Rule 5A:20(c)-(e); Hillcrest Manor Nursing Home, 35 Va. App. at 39 n.4, 542 S.E.2d at 789 n.4 (finding "an issue [was] not expressly stated among the 'questions presented,' . . . we, therefore, decline to consider [it] on appeal").

medical conditions, does not state claimant was totally disabled. The form simply repeats her light duty conditions, necessitated by her <u>partial</u> disability: she cannot lift heavy objects or reach overhead. If acceptance of the form did constitute implicit acceptance of a medical condition, it only suggested employer knew claimant was still partially disabled. We agree with the commission that acceptance of this form did not "provide a basis for an award of temporary total disability."

Conclusion

The commission did not consider the totality of the evidence surrounding claimant's refusal of selective employment. Therefore, we reverse and remand this case to the commission for further proceedings consistent with the foregoing opinion.

<u>Reversed and remanded.</u>