COURT OF APPEALS OF VIRGINIA


Present:   Judges Humphreys, Haley and Petty
Argued at Salem, Virginia


JAMES HENRY MULLINS

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 1728-06-3            JUDGE JAMES W. HALEY, JR.
                                                         JUNE 5, 2007
BIG LAUREL MINING AND NATIONAL
 UNION FIRE INSURANCE COMPANY OF
 PITTSBURGH


            FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            D. Allison Mullins (Lee & Phipps, P.C., on brief), for appellant.

            Brian J. Rife (Penn, Stuart & Eskridge, on brief), for appellees.


        James Henry Mullins ("appellant") maintains the evidence is insufficient to support the

decision of the Workers' Compensation Commission ("the commission"):  (1) that he unjustifiably

refused selective employment offered by his employer; and (2) that he failed to make a reasonable

effort to market his residual work capacity after leaving employment.  We find the evidence

sufficient to support the first determination by the commission, and, consistent with the undisputed

facts, conclude we need not address the second.

                                                    I.

                                               FACTS

        Appellant injured his left shoulder on April 13, 2004, while working as a roof-bolter in a

coal mine.  That work involved drilling an overhead hole in the mine roof, inserting a resin tube in

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

the hole, and then wrenching a roof bolt into the resin. Necessarily, the work required one to reach overhead and lift more than 25 pounds.

By agreement with his employer, Big Laurel Mining ("employer"), appellant was awarded temporary total and temporary partial disability benefits for various periods of time, ending December 14, 2004. On June 13, 2005, appellant filed a claim alleging a change in condition and seeking benefits from April 25, 2005, and continuing. Employer defended on the grounds that appellant had refused selective employment and failed to market his residual work capacity. A hearing was held before a deputy commissioner on September 6, 2005. The evidence adduced was essentially uncontradicted.

Reports from appellant's attending physician, Dr. T. Lisle Whitman ("Dr. Whitman"), stated: (1) on January 19, 2005, appellant could return to work, restricted by working only "at chest level and below," and lifting "no more than 5 pounds with the left arm"; (2) on February 14, 2005, appellant had "good strength in the arms. There are no areas of tenderness," and the earlier restrictions were continued; (3) on March 23, 2005: "[F]ull active range of motion, good strength below the shoulder level," and appellant could "work up to shoulder level in any job"; and, (4) on April 6, 2005: "Permanent restrictions include no work over shoulder level with the left arm, no lifting greater than 25 pounds with the left arm." In this final report, Dr. Whitman also advised, "I cannot find a physical cause for his current complaints . . . ." By letter dated August 26, 2005, Dr. Whitman stated that he found no "objective basis for [appellant's] current complaints of pain."

Charles Barnette ("Barnette"), appellant's shift supervisor, testified that between January 2005, and April 5, 2005, appellant was given work as a "general outside man," which was not an actual job position, but involved answering phones, checking communications, "clean-up of the change room," sweeping out the office, etc. On April 5, 2005, Barnette asked appellant to run the shuttle car. Barnette testified he was aware of appellant's work restrictions: "No lifting his arm

above shoulder height on his left arm and nothing over 25 pounds." On direct examination, the following exchange occurred:

Q. [W]as there anything in the shuttle car job that [appellant] tried that would have been over those restrictions?

A. No.

\* \* \* \* \* \* \*

Q. And would that job still be available for him to work to this day?

A. Yes.

Appellant ran the shuttle car off and on for three weeks, but, as will be set forth below, later claimed he could not continue. On April 25, 2005, the last day appellant worked, he was again asked to run the shuttle car but again said he could not do the job.

At the hearing, appellant testified he was "pretty sure" that Dr. Whitman had a job description for the shuttle car. He stated that he remembered discussing the job with Dr. Whitman on April 22, 2005. Appellant was aware of his work restrictions, and testified: "[N]othing over shoulder level . . . and nothing over 25 pounds. . . . [N]o overhead work." Appellant further testified he could not run the shuttle car because it was "just shaking and vibrating and jarring me too much and I couldn't stand the pain . . . ." He later explained, "It shook and beat and banged too much . . . ." Appellant did not testify that operating the shuttle car required any actions proscribed by his work restrictions.

As noted above, appellant last worked for employer on April 25, 2005. When asked what types of jobs he thereafter sought, appellant responded, "Basically the general stuff around Clintwood, a few other areas. Lumber stores, hardware stores, even talked to some barber shops and things like that . . . ." No evidence was offered as to the names or locations of these businesses. No evidence was offered as to the type of work sought, or if it was suitable to appellant's residual work capacity. No evidence was offered as to the time frame in which these inquiries were made.

- 3 -

No evidence was offered as to the number of job inquiries, and no evidence was offered as to any job applications actually filed. It is undisputed that appellant did not accept any employment subsequent to leaving his job with employer.

By decision of November 21, 2005, the deputy commissioner found that "the employer did offer [appellant] work . . . as a shuttle car operator." The deputy commissioner stated, "[T]here is no evidence that operating the shuttle car exceeded either of the restrictions placed by Dr. Whitman . . . that [appellant] would have had to lift more than 25 pounds with his left arm . . . [or] lift his arms above his shoulder . . . ." Accordingly, the deputy commissioner found appellant's refusal to accept the selective employment unjustified.

The deputy commissioner then concluded that appellant had not met his burden of establishing a reasonable bona fide effort to market his residual work capacity. After noting that appellant was a high school graduate, had completed college courses, and had a history of security work and truck driving, the commissioner wrote:

> Without knowing the particular businesses that [appellant] contacted, the type of employment that might have been available at those businesses, and without knowing when these contacts occurred, we have no basis for determining when [appellant's] efforts commenced and ended. Particularly, we have no way of judging whether these efforts were commensurate with [appellant's] age, education and work background.

By decision of June 16, 2006, the full commission affirmed the deputy commissioner, with one commissioner dissenting.

## II.

## ANALYSIS

Code § 65.2-510(A) states in pertinent part that "[i]f an injured employee refuses employment procured for him suitable to his capacity" benefits are limited "during the continuance

of such refusal, *unless in the opinion of the Commission such refusal was justified.*" (Emphasis added).

### (A) Offer of  Selective Employment

An employer bears the initial burden of establishing that a claimant unjustifiably refused selective employment. Hillcrest Manor Nursing Home v. Underwood, 35 Va. App. 31, 37, 542 S.E.2d 785, 788 (2001). The employer must establish "'(1) a bona fide job offer suitable to the employee's capacity; (2) procured for the employee by the employer; and (3) an unjustified refusal by the employee to accept the job.'" Id. (quoting Ellerson v. W.O. Grubb Steel Erection Co., 1 Va. App. 97, 98, 335 S.E.2d 379, 380 (1985)).

The Supreme Court of Virginia has explained that, with respect to whether a job offer is suitable to an injured employee's residual capacity, "the tender of limited employment must necessarily be based upon informed medical opinion." Talley v. Goodwin Bros. Lumber Co., 224 Va. 48, 52, 294 S.E.2d 818, 820 (1982). The Court continued, "[H]owever, where the attending physician has specified the limitations in detail and it is obvious that the proffered job fits these limitations, it may not always be necessary to submit the job description to the physician for what would be merely a 'rubber stamp action.'" Id. at 52, 294 S.E.2d at 820-21.

In the instant case, it is undisputed that the employer offered appellant, and continued to offer as of the date of the hearing before the deputy commissioner, a job as a shuttle car operator. That work, according to all testimony, did not require appellant to lift more than 25 pounds or raise his left arm above shoulder level. Those two work restrictions were the only limitations set forth in the evidence, and were acknowledged as such by appellant. The physical requirements of the proffered job—as a shuttle car operator—were known to Dr. Whitman. Thus, the tender of employment was based upon "informed medical opinion" as to appellant's residual work capacity.

(B) Refusal of Selective Employment

"[W]hen the employer . . . establishes that a job offer has been tendered within the residual capacity of the injured employee, the burden of persuasion then shifts to the employee to show justification for refusing the offer of modified work." Klate Holt Co. v. Holt, 229 Va. 544, 545, 331 S.E.2d 446, 447 (1985) (citing Talley, 224 Va. at 52, 294 S.E.2d at 820). See also Ballweg v. Crowder Contracting Co., 247 Va. 205, 209, 440 S.E.2d 613, 615 (1994); Clements v. Riverside Walter Reed Hosp., 40 Va. App. 214, 222, 578 S.E.2d 814, 817 (2003).

As this Court explained in Food Lion v. Lee, 16 Va. App. 616, 619, 431 S.E.2d 342, 344 (1993) (quoting Johnson v. Virginia Employment Comm'n, 8 Va. App. 441, 452, 382 S.E.2d 476, 481 (1989)), "[t]o support a finding of justification to refuse suitable selective employment, 'the reasons advanced must be such that a reasonable person desirous of employment would have refused the offered work.'" Because "it is impossible to anticipate and legislate every potential event" justifying a refusal, DePaul Med. Ctr. v. Brickhouse, 18 Va. App. 506, 508, 445 S.E.2d 494, 495 (1994), and recognizing the statutory deference to "the opinion of the [c]ommission," when the commission has determined that such an offer was made, and was unjustifiably refused, we will not reverse those decisions if supported by credible evidence or reasonable inferences drawn from such evidence. Food Lion, 16 Va. App. at 619, 431 S.E.2d at 344. Such decisions are questions of fact. Gallahan v. Free Lance Star Publ. Co., 37 Va. App. 114, 118, 554 S.E.2d 685, 686 (2001).

The only reason given by employee for refusing the job of operating the shuttle car, a job consistent with his restrictions, was that the car's "shaking and banging" caused him pain. His attending physician, however, found "no objective basis" for these complaints of pain.

We conclude, as did the commission, that employer made a bona fide offer of appropriate selective employment and that appellant unjustifiably refused that employment. Applying the standard of review summarized above, we affirm the decision of the commission on this issue.

(C) Marketing Residual Capacity

Despite appellant's unjustified refusal of employment, he may still be entitled to benefits if he cures that refusal.  <u>Clements</u>, 40 Va. App. at 225, 578 S.E.2d at 819.  Code § 65.2-510(B) states:

> If an injured employee cures his unjustified refusal by accepting employment suitable to his capacity at a wage less than that originally offered, the employer shall pay or cause to be paid to the injured employee during his partial incapacity . . . a weekly compensation equal to 66 2/3 percent of the difference between his average weekly wages before his injury and the average weekly wage the employee would have earned by accepting the original proffered light duty employment.

Thus, any "cure" of an unjustified refusal to accept selective employment is predicated upon an individual "accepting [other] employment suitable to his capacity."  Here, appellant did not accept any employment following his refusal.  Therefore, any inquiry as to whether he reasonably marketed his residual work capacity is rendered moot.  <u>See</u> <u>Clements</u>, 40 Va. App. at 226-27, 578 S.E.2d at 819-20; <u>Nat'l Linen Serv. v. McGuinn</u>, 8 Va. App. 267, 270-72, 380 S.E.2d 31, 33-35 (1989).

Applying the appropriate standard of review, noted above, we affirm the decision of the commission.

<u>Affirmed.</u>