COURT OF APPEALS OF VIRGINIA


Present:   Judges Benton, Elder and Haley
Argued by teleconference


M & S AUTO PARTS, INC. AND
   TRAVELERS INDEMNITY COMPANY
   OF CT
                                                        OPINION BY
v.        Record No. 2314-04-3              JUDGE LARRY G. ELDER
                                                        APRIL 19, 2005

LEONARD L. PRESGRAVES


            FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            Thomas G. Bell, Jr. (Timberlake, Smith, Thomas & Moses, P.C., on
            brief), for appellants.

            A. Thomas Lane, Jr., for appellee.


        M & S Auto Parts, Inc., and Travelers Indemnity Company of CT (hereinafter

collectively employer) appeal a decision of the Workers' Compensation Commission awarding

Leonard L. Presgraves (claimant) temporary total disability benefits following his compensable

industrial accident and back injury of December 5, 2002.[1]  Employer contends the commission

erroneously concluded claimant's post-injury termination from full-duty employment, even if

that termination was for cause, did not automatically bar his subsequent receipt of disability

benefits during periods in which he was partially disabled and unable to find suitable alternative

employment.  We affirm the ruling of the commission under the facts of this case.

---

[1] The commission also awarded medical benefits.  Employer does not contest the
compensability of the injury itself.  Thus, the issue of claimant's entitlement to medical benefits
is not before us in this appeal.

I.

BACKGROUND

Employer operates a NAPA Auto Parts store in Luray, Virginia, selling parts both over-the-counter and by delivery to local auto repair shops. In its typical operation, the store has two employees--a delivery person and a counter person. Sixty percent of employer's business results from its wholesale delivery sales to local repair shops. Because the company has a limited inventory and three local competitors, it is important that parts be delivered to the business' wholesale customers promptly each morning.

On September 16, 2002, claimant began working for employer as the delivery person. The counter person and supervisor was Paul Strassner. Claimant's job involved making deliveries, stocking shelves, and testing car batteries. It involved lifting items like car and tractor batteries and cases of motor oil and transmission fluid that weighed 40 to 50 pounds.

Claimant arrived late to work on a regular basis, and Strassner counseled him verbally about his tardiness, trying to impress upon him the negative impact on the company's ability to be competitive in its service to its customers. On October 14, 2002, appellant was thirty-seven minutes late. Strassner gave him a written warning, explaining that he could be terminated if the tardiness continued. Claimant's tardiness improved initially but then worsened again. By December 2002, claimant "was pretty much back to his old ways."

While at work for employer shortly after 10:00 a.m. on December 5, 2002, claimant slipped and fell on some ice in a parking lot, hurting his lower back. Later that day, claimant was seen in the Page Memorial Hospital Emergency Room. He was released to return to work "in 2 days" with no restrictions.

Claimant was scheduled to work Friday, December 13, 2002, but did not do so, for reasons not apparent from the record. He worked a half-day on Saturday, December 14, 2002.

Claimant was scheduled to work on Monday, December 16, 2002, at 7:45 a.m. but did not clock in until 8:31 a.m. After claimant finished his shift that day, Strassner terminated him based on his tardiness.

Claimant had no work restrictions at the time of his termination on December 16, 2002. After receiving medical treatment for his back injury on December 5 and 6, 2002, claimant did not obtain additional medical treatment until January 30, 2003. During the week of Christmas 2002, claimant called Strassner and asked for his job back. Strassner told claimant the company had no openings. That same week, claimant called the owner of the company and received the same response.

From January 30, 2003, until April 2003, claimant treated with orthopaedist Eric W. Hirsch, who referred him to another orthopaedist, Christopher P. Silveri. On April 23, 2003, Dr. Silveri said claimant could perform "light duty at work avoiding heavy lifting over 20 pounds and excessive bending or twisting." Dr. Kimberly H. Salata began treating claimant on May 27, 2003, on referral from Dr. Silveri, and she agreed with Dr. Silveri's restrictions. Claimant testified at the hearing that his understanding from Dr. Hirsch was that he was "not able to work" between January and April 2003. When Dr. Silveri released him to light duty in April 2003, he began to look for employment. Claimant called Strassner "in the spring" after receiving his light-duty restrictions, and Strassner said "we didn't have any openings." Claimant called again on September 8, 2003, and Strassner again told him there were no openings.

Claimant sought temporary total disability benefits from December 16, 2002, the date he was terminated, and continuing. The deputy commissioner found claimant failed to establish he was disabled before Dr. Salata put him on restricted duty on May 27, 2003. The deputy held that claimant sufficiently marketed his residual capacity after that time[2] but concluded under C & P

---

[2] Employer did not challenge this finding on review, as noted by the commission.

Telephone Co. v. Murphy, 12 Va. App. 633, 406 S.E.2d 190, aff'd, 13 Va. App. 304, 411 S.E.2d 444 (1991) (en banc), that claimant was not entitled to disability benefits because he was fired for cause in December 2002 and would be entitled to benefits only during periods of temporary total disability.

On claimant's request for review, a majority of the commission awarded claimant temporary total disability benefits from April 23, 2003, the date on which Dr. Silveri first issued work restrictions for claimant. The commission found claimant failed to establish he was partially or totally disabled between his return to work in December 2002 and April 23, 2003, the date on which Dr. Silveri first issued work restrictions. The two members of the majority, Commissioners Diamond and Dudley, did not agree on the reason for awarding benefits from April 23, 2003, and continuing. Commissioner Diamond opined as follows:

> When a partially disabled claimant is discharged from selective employment, his temporary total disability benefits may be permanently forfeited if his dismissal was "justified." Chesapeake & Potomac Telephone Co. v. Murphy, 12 Va. App. 633, 406 S.E.2d, aff'd en banc, 13 Va. App. 304, 411 S.E.2d 444 (1991). The employer offered no evidence that light duty work would have been made available to the claimant--after the claimant was placed on light duty in April of 2003--had the claimant not been terminated in December of 2002. Thus, the employer's reasons for terminating the claimant are irrelevant in this proceeding and the claimant was not precluded from obtaining future disability compensation because of his termination from his full duty job on December 16, 2002. See Norman v. Indian Acres Club of Thornburg, Inc., VWC File No. 189-64-52 (September 7, 1999).

Commissioner Dudley concurred, reasoning as follows:

> [A]n employee's termination for justified cause while working full duty may be relevant, and would be a cause of his economic loss, where his misconduct effectively removes him from future light-duty employment with the employer that could have otherwise been available. In this case, the claimant contacted the employer on several occasions seeking light duty. He was told that there were no positions available. There is no evidence of record that a suitable light-duty position would have been available, or

- 4 -

may have been available, but for the claimant's misconduct. Under the circumstances, I agree that his misconduct in this case does not prevent him from receiving benefits, because there is no evidence that light duty may have been a viable alternative, if he had left his full-duty work due to partial incapacity, rather than misconduct.

Commissioner Tarr dissented, opining that to the extent <u>Murphy</u> required employer to prove claimant's economic loss was caused by his misconduct, "the economic loss was proven. Had the claimant not chronically violated his employer's attendance policy, he would have continued his employment. Any wage loss suffered was a result of the claimant's termination rather than his injury."

Employer noted this appeal.

II.

ANALYSIS

Employer concedes that the question presented in this case--the impact of Code § 65.2-510 on an injured employee who is terminated for cause while working in his pre-injury employment and subsequently becomes partially disabled--is one of first impression. It urges us to apply our holding in <u>Murphy</u>, 12 Va. App. 633, 406 S.E.2d 190, to conclude that "an employee terminated for justified cause while on full unrestricted duty after a compensable accident should be treated [no] differently from one who is on restricted duty" and should be forever barred from receiving disability compensation during subsequent periods of temporary disability.[3] Claimant, on the other hand, contends that Code § 65.2-510 applies only to cases in which an employee is working in a light-duty position at the time of termination and is irrelevant

---

[3] Employer does not contest the well established principle that an employee terminated for cause remains entitled to compensation during periods of temporary total physical disability caused by the compensable injury or condition. <u>See, e.g.</u>, <u>Potomac Edison Co. of Va. v. Cash</u>, 18 Va. App. 629, 631, 446 S.E.2d 155, 156 (1994).

under the facts of this case.  We agree with claimant that Code § 65.2-510 does not apply under the facts of this case.

Present Code § 65.2-510(A) provides as follows:

> If an injured employee refuses employment procured for him suitable to his capacity, he shall only be entitled to the benefits provided for in §§ 65.2-503 and 65.2-603, excluding vocational rehabilitation services provided for in subdivision A 3 of § 65.2-603, during the continuance of such refusal, unless in the opinion of the Commission such refusal was justified.

Interpreting an earlier version of this statute, Code § 65.1-63, that contained substantially similar language,[4] the Supreme Court held that the statute applies only to the refusal of selective employment the employer procures for the employee and does not apply where the employee has been terminated for cause from selective employment he procured for himself.  See, e.g., American Steel Placing Co. v. Adams, 230 Va. 189, 335 S.E.2d 270 (1985) (holding that termination for cause from employment procured by employee does not constitute unjustified refusal of selective employment barring benefits under statute).

In Murphy, we considered whether Code § 65.1-63 permitted an employee terminated for cause from selective employment procured by the employer to cure the unjustified refusal of selective employment.  12 Va. App. at 635, 406 S.E.2d at 191.  Murphy involved a claimant who was terminated for cause while working in a light-duty position for his pre-injury employer.  Id. at 635, 406 S.E.2d at 190.  Murphy subsequently procured a light-duty position with a different employer in which he earned less than his pre-injury wage, and he sought temporary partial disability benefits based on the wage differential.  Id. at 635, 406 S.E.2d at 191.

---

[4] Former Code § 65.1-63, the predecessor to present Code § 65.2-510, provided that "If an injured employee refuses employment procured for him suitable to his capacity, he shall not be entitled to any compensation at any time during the continuance of such refusal, unless in the opinion of the Industrial Commission such refusal is justified."

We noted

> the commission and the courts have consistently interpreted this
> code section to permit an employee to "cure" his unjustified refusal
> of selective employment by accepting such employment. The
> premise is that an employer is liable for the condition of the
> employee resulting from an industrial accident and the employer
> may reduce its monetary liability by procuring employment
> suitable to the employee's capacity. In turn, the employee is
> required to accept such employment procured by the employer or
> suffer the wage loss during the period of an unjustified refusal.
> Thus, once an employee accepts selective employment, that
> employee is entitled to benefits even though he was previously
> denied those same benefits. Such an employee is considered as
> having "cured" his past unjustified refusal of selective
> employment.
>
> Code § 65.1-63 contains no time limitations within which
> the employee may cure his refusal.

Id. at 636, 406 S.E.2d at 191. We then proceeded to consider the precise question at issue in

Murphy--whether Murphy's termination for cause (for "misrepresent[ing] both his medical

condition and his ability to work") from selective light-duty employment provided by employer

barred him from curing his refusal. Id. We noted the Supreme Court's prior holding that an

employee terminated for cause from light-duty employment the employee procured for himself

could cure a prior refusal of selective employment offered by the pre-injury employer. Id. at

639, 406 S.E.2d at 193. However, we concluded that an employee was not entitled to cure a

prior unjustified refusal of selective employment where the employee has been terminated for

cause from selective employment procured by the employer rather than the employee. Id.

We reasoned as follows:

> [W]here a disabled employee is terminated for cause from
> selective employment procured or offered by his employer, any
> subsequent wage loss is properly attributable to his wrongful act
> rather than his disability. The employee is responsible for that loss
> and not the employer. In this context, we are unable to find any
> provision within the Workers' Compensation Act which evidences
> an intent by the legislature to place such an employee in a better

- 7 -

> position than an uninjured employee who is terminated for cause and by his wrongful act suffers a loss of income.

Id. at 639-40, 406 S.E.2d at 193. We also noted the Supreme Court's recognition that "'[Code § 65.1-63] does not require that employers make selective employment available. But the *relief* thereby afforded an employer when an employee unjustifiably refuses to accept or continue selective employment *is limited to those cases in which the employer has provided or procured such employment*.'" Id. at 639, 406 S.E.2d at 193 (quoting Big D Quality Homebuilders v. Hamilton, 228 Va. 378, 381-82, 322 S.E.2d 839, 841 (1984) (citations omitted) (emphasis added)).

The General Assembly subsequently reenacted Code § 65.1-63 as Code § 65.2-510 and amended it to recognize the ability of an injured employee to cure a refusal of selective employment procured for him and to provide a time limit on the period in which an employee may do so. See 1991 Va. Acts, ch. 355; 1995 Va. Acts, ch. 319; 1996 Va. Acts, ch. 252. However, the General Assembly did not alter the basic purpose of the statute or the interpretation given it by our appellate courts.

The express language of Code § 65.2-510(A) provides that an injured employee is not entitled to temporary disability benefits if he "refuses employment *procured for him suitable to his capacity*." (Emphasis added). Thus, an employer seeking to invoke the bar of Code § 65.2-510 bears the burden of establishing that it offered to the injured employee "employment . . . suitable to his capacity." Id.; see Talley v. Goodwin Bros. Lumber Co., 224 Va. 48, 52, 294 S.E.2d 818, 820 (1982) (holding employer using refusal as affirmative defense bears burden of showing offer of job within employee's residual capacity, at which time burden shifts to employee to show refusal was justified). Where an employee is actually working for employer in a light-duty position "suitable to his capacity" (or in such a position for another employer, where the original employer procured that new employment on the employee's behalf) and is

terminated for "'cause' . . . of the type that warrants permanent forfeiture of compensation benefits," Eppling v. Schultz Dining Pgms., 18 Va. App. 125, 128-29, 442 S.E.2d 219, 221 (1994), the behavior justifying the termination constitutes a "refus[al of] employment procured for him suitable to his capacity," a refusal that, pursuant to Murphy, cannot be cured.

However, where an injured employee returns to his pre-injury employment without restrictions and, while working full-duty, is terminated for "'cause' . . . of the type that [may, under appropriate circumstances,] warrant[] permanent forfeiture of compensation benefits," id., the terms of Code § 65.2-510(A) expressly do not apply. In order for Code § 65.2-510(A), as interpreted in Murphy, to apply, the job the employee refuses must be a suitable *light-duty* position procured for the employee by the employer. American Furniture Co. v. Doane, 230 Va. 39, 42-43, 334 S.E.2d 548, 550 (1985) (noting statute applies to refusal of "*selective* employment," employment "within the employee's *residual capacity"* (emphases added)). When an employee returns to his full pre-injury employment after an injury, the position is neither a light-duty position nor a position procured by the employer. See Baker v. La. Pac. Corp., 853 P.2d 544, 547 (Idaho 1993) (holding similar statute referring to "partially disabled" employee did not apply because employee had returned to work "without any limitations" and "was not a partially disabled employee when he lost his job"). To hold that an injured employee's termination for cause from post-injury, full-duty employment forever bars the employee from receiving disability benefits during subsequent periods of partial disability is an exceedingly harsh result not required by the language of the Workers' Compensation Act and might result in a windfall to employer.

We need not decide whether Code § 65.2-510 permits an employer to establish a constructive refusal of selective employment by showing that, but for a claimant's earlier termination for cause while working full duty, it would have had suitable selective employment

available for the claimant when he later became partially disabled. As set out above, an employer seeking to invoke the bar of Code § 65.2-510(A) bears the burden of establishing that it offered to the injured employee "employment . . . suitable to his capacity." Here, employer did not allege that it would have had available to claimant, but for his termination for cause, "employment . . . suitable to his capacity." A majority of the commission found the record contained no evidence that suitable light-duty work would have been available but for claimant's misconduct, and the record supports that finding.

Thus, Code § 65.2-510 does not bar claimant's receipt of temporary disability benefits from April 23, 2003, and continuing.

### III.

For these reasons, we hold claimant's post-injury termination from full-duty employment, even if that termination was for cause, did not automatically bar his subsequent receipt of disability benefits during periods in which he was partially disabled and unable to find suitable alternative employment. Thus, we affirm the ruling of the commission under the facts of this case.

<u>Affirmed.</u>