644 S.E.2d 93

William C. DOWDEN, Jr.

v.

HERCULES, INC. and Aqualon Company.

Record No. 1226–06–2.

Court of Appeals of Virginia,
Richmond.

May 8, 2007.

**670**

Stephen T. Harper (Kerns, Kastenbaum & Reinhardt, on brief), Richmond, for appellant.

Angela Fleming Gibbs (Charles F. Midkiff; Midkiff, Muncie & Ross, P.C., on brief), Richmond, for appellees.

Present: FELTON, C.J., and CLEMENTS and BEALES, JJ.

JEAN HARRISON CLEMENTS, Judge.

William C. Dowden, Jr. (claimant) appeals a decision of the Virginia Workers' Compensation Commission (commission) terminating his temporary partial disability benefits. Claimant contends the commission erred in determining he did not partially cure his unjustified refusal of selective employment offered by Hercules, Inc. (employer). For the reasons that follow, we reverse the decision of the commission and remand.

## I. BACKGROUND

The relevant facts are not in dispute. Claimant began working for employer in 1969. After thirty years of employment, he voluntarily applied for early retirement on August 23, 2000, pursuant to a buy-out offer designed to assist employer in reducing its workforce. On January 31, 2001, while his application for early retirement was pending, claimant injured his back at work. Prior to his injury, claimant earned an average weekly wage of $1,243.64 per week. Upon returning to light-duty work with employer, he earned a wage of $1,002 per week. The commission subsequently awarded claimant temporary partial disability benefits from February 1, 2001, and continuing, at a rate of $161.10 per week.

After claimant returned to light-duty work, he was notified that his application for early retirement had been approved. Claimant accepted employer's offer of early retirement and retired effective May 1, 2001. Employer continued to pay claimant $161.10 per week in temporary partial disability payments through July 13, 2003. On or around that date, employer discovered claimant had accepted employment as a sales associate with a friend's seafood company on March 10, 2003, earning $200 per week.

On July 24, 2003, employer filed an application with the commission seeking termination or suspension of claimant's award and credit for benefits paid from March 10, 2003, through July 13, 2003. Employer argued that claimant unjustifiably refused selective employment by voluntarily retiring and that he failed to cure his unjustified refusal. Claimant filed a change-in-condition application on September 5, 2003, seeking a continuation of his temporary partial disability wage-loss benefits of $161.10 per week. Claimant argued that he did not refuse selective employment when he retired, but, if the commission found he did, he cured that refusal on March 10, 2003, when he procured other selective employment.

Finding that claimant's voluntary retirement constituted an unjustified refusal of selective employment pursuant to Code § 65.2–510(A) and that claimant did not effectuate a cure

within six months from the date of his retirement as required by Code § 65.2–510(C), the deputy commissioner granted employer's application and denied claimant's change-in-condition application. Upon review, the full commission agreed with the deputy commissioner that claimant unjustifiably refused selective employment when he voluntarily retired. It disagreed, however, that Code § 65.2–510(C)'s six-month statute of limitations to cure the unjustified refusal began running on the date of claimant's retirement. Accordingly, the full commission remanded the case "for determination of the date the claimant's cure requirement began ... and whether the claimant cured the unjustified refusal."

On remand, the deputy commissioner determined that, because claimant failed "to report his return to work on March 10, 2003," Code § 65.2–510(C)'s six-month statute of limitations to cure claimant's unjustified refusal began to run on that date.[1] The deputy commissioner then found that claimant failed to cure his unjustified refusal by September 10, 2003, and, thus, was not entitled to temporary partial disability benefits beyond March 10, 2003. In reaching that decision, the deputy commissioner found that claimant's employment paying $200 per week did not cure his unjustified refusal of selective employment because it was not comparable to the employment paying $1,002 per week he had refused.

Appealing the deputy commissioner's decision to the full commission, claimant asserted that his return to work selling seafood on March 10, 2003, constituted a cure of his unjustified refusal of selective employment under Code § 65.2–510(B). He argued that Code § 65.2–510(B) did not require him to obtain employment at a wage "comparable" to the wage he would have earned had he continued the selective employment offered by employer.

A majority of the full commission disagreed with claimant, holding that the employment an injured worker procures

---

1. As the full commission noted, neither party challenged this determination.

"must be at a wage comparable to that of the previously refused position" to constitute a cure under Code § 65.2–510. Accordingly, the commission affirmed the deputy commissioner's decision that claimant failed to cure his unjustified refusal of selective employment, noting as follows: "The claimant was earning $1,002 per week in his selective employment, and after his refusal, he began earning $200 per week. The evidence does not indicate that the employment he procured was comparable and effectuated a cure of his unjustified refusal of selective employment."

This appeal by claimant followed.

## II. ANALYSIS

■ The sole issue on appeal is whether claimant's acceptance on March 10, 2003, of selective employment paying $200 per week was sufficient under Code § 65.2–510(B) [2] to cure his unjustified refusal of selective employment offered by employer paying $1,002 per week. Relying on this Court's decisions in *Food Lion, Inc. v. Newsome,* 30 Va.App. 21, 515 S.E.2d 317 (1999), and *Clements v. Riverside Walter Reed Hospital,* 40 Va.App. 214, 578 S.E.2d 814 (2003), the commission concluded that claimant's procurement of the $200–per–week selective employment was not sufficient to cure his unjustified refusal because the wage he earned at that employment was not comparable to the wage he earned at the selective employment offered by employer. We hold that our decision in *Hillcrest Manor Nursing Home v. Underwood,* 35 Va.App. 31, 542 S.E.2d 785 (2001), and the express language of Code

---

2. Code § 65.2–510(B) provides as follows:

 If an injured employee cures his unjustified refusal by accepting employment suitable to his capacity at a wage less than that originally offered, the employer shall pay or cause to be paid to the injured employee during his partial incapacity pursuant to § 65.2–502, a weekly compensation equal to 66 2/3 percent of the difference between his average weekly wages before his injury and the average weekly wage the employee would have earned by accepting the original proffered light duty employment.

§ 65.2–510(B) control the outcome of this case and require the opposite conclusion.

 It is well settled that an injured employee who unjustifiably refuses selective employment offered by the employer is not "entitled to receive disability compensation during the continuance of the refusal." *Virginia Wayside Furniture, Inc. v. Burnette*, 17 Va.App. 74, 78, 435 S.E.2d 156, 159 (1993); *see* Code § 65.2–510(A). However, "once an employee has cured an unjustified refusal of selective employment, he ... is entitled to reinstatement of benefits," *Newsome*, 30 Va.App. at 25, 515 S.E.2d at 319 (citing Code § 65.2–510), as long as the cure is effectuated within "six months from the last day for which compensation was paid before suspension pursuant to [Code § 65.2–510(A)]," Code § 65.2–510(C). The calculation of the employee's benefits following a timely cure depends on whether he fully cured the unjustified refusal or only partially cured it. *Compare Newsome*, 30 Va.App. at 25–26, 515 S.E.2d at 319–20 (addressing compensation following a full cure under Code §§ 65.2–510 and 65.2–502), *with Hillcrest Manor Nursing Home*, 35 Va.App. at 37, 39, 542 S.E.2d at 788, 789 (addressing compensation following a partial cure under Code § 65.2–510(B)).

 A full cure occurs when the injured employee procures "other selective employment at a wage equal to or greater than" the wage of the refused selective employment. *Newsome*, 30 Va.App. at 23, 26, 515 S.E.2d at 318, 320. If the employee fully cures his unjustified refusal, he is entitled to "a weekly compensation equal to 66 2/3 percent of the difference between his average weekly wages before the injury and the average weekly wages ... *he is able to earn thereafter.*" Code § 65.2–502 (emphasis added); *see Newsome*, 30 Va.App. at 25, 515 S.E.2d at 319 ("Once an employee cures an unjustified refusal of employment, Code § 65.2–510 returns the parties to their pre-refusal status, and Code § 65.2–502 obligates the employer to pay partial incapacity benefits."). Accordingly, we held in *Newsome* that, although the injured employee was unemployed for seven-and-one-half weeks during the

post-refusal period for which he sought compensation, because he had already fully cured his refusal and marketed his full residual work capacity during the period of unemployment, the employer's liability was not limited "to the difference between [the employee's] refused selective employment wage and his pre-injury wage." 30 Va.App. at 25–26, 515 S.E.2d at 319–20. In other words, having fully cured his refusal of selective employment, the employee was entitled to compensation for a full cure under Code § 65.2–502(A), rather than compensation for a partial cure under Code § 65.2–510(B).

A partial cure occurs when the injured employee procures other selective employment " 'at a wage less than that originally offered' " by the employer. *Hillcrest Manor Nursing Home*, 35 Va.App. at 37, 39, 542 S.E.2d at 788, 789 (quoting and citing Code § 65.2–510(B)). If the employee partially cures his unjustified refusal, he is entitled to "a weekly compensation equal to 66 2/3 percent of the difference between his average weekly wages before his injury and the average weekly wage the employee would have earned by accepting the original proffered light duty employment." Code § 65.2–510(B); *see Hillcrest Manor Nursing Home*, 35 Va.App. at 37, 39, 542 S.E.2d at 788, 789. Accordingly, the employer's liability under Code § 65.2–510(B) is not based on the difference between the employee's pre-injury wage and the wage he could or does earn, but rather on the difference between his pre-injury wage and the wage he would have earned had he not refused the selective employment offered by the employer. This approach does not defeat the purposes of Code § 65.2–510—to the contrary, it encourages the injured employee to return to work, any work, and limits the employer's liability to the same liability it would have had if the employee had not refused the employer's offer of selective employment.[3] *See Big D Quality Homebuilders v. Hamilton,*

---

**3.** Indeed, an employer that offers an injured employee selective employment at a wage equal to or greater than the employee's pre-injury wage would have no liability under the partial cure provisions of Code § 65.2–510(B).

228 Va. 378, 382, 322 S.E.2d 839, 841 (1984) ("The legislative intent [of Code § 65.1–63 (recodified as Code § 65.2–510) ] is to encourage injured employees to seek selective employment rather than to remain unemployed. . . ."); *Food Lion, Inc. v. Lee,* 16 Va.App. 616, 619, 431 S.E.2d 342, 344 (1993) ("Code § 65.2–510 was enacted . . . to encourage employers to procure employment suitable to partially incapacitated employees.").

■ Nothing in Code § 65.2–510(B) limits the application of that subsection to only injured employees who procure selective employment at wages comparable to the wages they would have earned had they not refused the originally offered selective employment. *See Britt Construction v. Magazzine Clean, LLC,* 271 Va. 58, 62–63, 623 S.E.2d 886, 888 (2006) ("When statutory language is unambiguous, we are bound by the plain meaning of that language. Therefore, when the General Assembly has used words of a definite import, we cannot give those words a construction that amounts to holding that the General Assembly meant something other than that which it actually expressed." (citations omitted)). Indeed, the only wage-related provision that limits Code § 65.2–510(B)'s application is the subsection's express requirement that the wage of the selective employment procured by the employee be "less than that originally offered" by the employer. Thus, contrary to the commission's conclusion, an employer may not escape liability for workers' compensation benefits under Code § 65.2–510(B) simply because the employee procures selective employment that pays substantially less than the selective employment offered by the employer. *See Peacock v. Browning Ferris, Inc.,* 38 Va.App. 241, 248, 563 S.E.2d 368, 372 (2002) ("[W]e will withhold the deference we normally accord the commission's statutory interpretation of the Workers' Compensation Act when the commission's interpretation conflicts with the plain language of the statute."); *Hillcrest Manor Nursing Home,* 35 Va.App. at 39–40, 542 S.E.2d at 789 (applying Code § 65.2–510(B)).

In *Hillcrest Manor Nursing Home,* the claimant suffered a compensable injury by accident that limited her work capacity and prevented her from continuing in her full-time, full-duty position. 35 Va.App. at 34–35, 542 S.E.2d at 787. The employer offered the claimant part-time selective employment, which the claimant accepted. *Id.* at 35, 542 S.E.2d at 787. Thereafter, the employer offered the claimant full-time selective employment, which the claimant unjustifiably refused. *Id.* at 35–36, 38, 542 S.E.2d at 787, 789. The claimant continued to work part-time for the employer and took no apparent steps to market her full residual work capacity. *Id.* at 35–36, 542 S.E.2d at 787. Considering the claimant's request for benefits for the period following her refusal of the full-time selective employment, the commission determined that the claimant "partially cured her ... [unjustified] refusal of full-time selective employment by simply continuing the part-time, light duty work that predated the offer" of full-time employment. *Id.* at 39, 542 S.E.2d at 789. "[T]he commission reasoned that, 'although it was the claimant's decision to work the reduced hours, the effect was the same as if she, in an attempt to cure, had obtained alternate employment at a reduced wage.'" *Id.* Thus, the commission awarded the claimant partial disability benefits "pursuant to Code § 65.2–510(B)." *Id.* We affirmed the commission's judgment, noting as follows:

> If claimant had refused the offer of full-time employment, resigned and thereafter immediately accepted part-time, light duty work with employer or elsewhere, at reduced wages, she would have partially cured such refusal. Likewise, continued part-time, selective employment with [the employer], following the full-time offer, constituted a partial cure of her prior unjustified refusal of such employment within the intendment of Code § 65.2–510(B). A contrary result would deny benefits under circumstances evincing little substantive difference in conduct, thereby thwarting the purposes of the Workers' Compensation Act.... Accordingly, the commission correctly determined that "claimant would still be entitled to temporary benefits based on

the difference between her pre[-]injury average weekly wage and the wage she would have earned had she accepted [the] full-time hours."

*Id.* at 39–40, 542 S.E.2d at 789 (emphasis added).

In this case, claimant did just what we spoke of in *Hillcrest Manor Nursing Home*—he refused employer's offer of continued full-time selective employment, resigned in order to take voluntary retirement, and thereafter timely accepted selective employment with a different employer at reduced wages. Accordingly, we hold that *Hillcrest Manor Nursing Home* is applicable to this case and requires the conclusion that claimant partially cured his refusal of selective employment under Code § 65.2–510(B).

Moreover, we are aware of no controlling precedent since Code § 65.2–510(B)'s enactment in 1995 that supports the commission's conclusion that claimant did not partially cure his unjustified refusal of selective employment under Code § 65.2–510(B) because the position he procured was not "at a wage comparable to that of the previously refused position." As noted above, *Newsome* was decided under the full cure provisions of Code §§ 65.2–510 and 65.2–502. *See* 30 Va.App. at 26, 515 S.E.2d at 320 ("[B]ecause Newsome properly cured his refusal of selective employment, as long as he fully markets his residual capacity, we find no authority to limit the employer's liability to the difference between Newsome's refused selective employment wage and his pre-injury wage."). In *Clements*, we cited Code § 65.2–510(B) and *Hillcrest Manor Nursing Home* for the proposition that a claimant may "partially cure a refusal" but expressly stated in a footnote that the claimant in that case "never argued that she partially cured her refusal." 40 Va.App. at 225 & n. 7, 578 S.E.2d at 819 & n. 7. Similarly, we expressly noted in *Metropolitan Washington Airports Authority v. Lusby,* 41 Va.App. 300, 315 n. 8, 585 S.E.2d 318, 325 n. 8 (2003), that, although Code § 65.2–510 "was amended in 1995 to allow for a 'partial' cure[, it was] clear from the full commission's opinion that it proceeded under the former statute, which was in effect at the time of [the claimant's] injury, because it [did] not contemplate

or consider partial cure as a basis for recovery in [the] case." Thus, none of these cases was decided under the partial cure provisions of Code § 65.2–510(B).[4]

We hold, therefore, pursuant to *Hillcrest Manor Nursing Home* and the express language of Code § 65.2–510(B), that claimant's acceptance on March 10, 2003, of selective employment paying $200 per week was sufficient under Code § 65.2–510(B) to partially cure his unjustified refusal of selective employment paying $1,002 per week. Consequently, having timely partially cured his unjustified refusal of selective employment, claimant was entitled to a continuation of his temporary partial disability wage-loss benefits in accordance with Code § 65.2–510(B).

## III. CONCLUSION

For these reasons, we reverse the commission's decision and remand this case for further proceedings consistent with this opinion.

*Reversed and remanded.*

---

4. Relying on *National Linen Service v. McGuinn,* 8 Va.App. 267, 380 S.E.2d 31 (1989), a case that predates the enactment of Code § 65.2–510(B), the dissent reads Code § 65.2–510(B)'s "employment suitable to his capacity" language as permitting a partial cure only where an injured employee either (1) procures selective employment that requires him "to perform tasks comparable to those he performed during his selective employment" with the employer or (2) demonstrates he has made reasonable efforts to procure such selective employment or to market his full residual work capacity. However, as the dissent specifically notes, the phrase "employment suitable to his capacity" means nothing more than "employment within the employee's residual [work] capacity resulting from the industrial accident." *American Furniture Co. v. Doane,* 230 Va. 39, 42, 334 S.E.2d 548, 550 (1985). In other words, the phrase simply refers to employment that does not exceed the partially disabled employee's work restrictions and limitations caused by the compensable injury, and is often used interchangeably with such terms as "selective employment," *see, e.g., id.* at 42–43, 334 S.E.2d at 550, and "suitable light-duty [employment]," *see, e.g., M & S Auto Parts, Inc. v. Presgraves,* 45 Va.App. 455, 464, 611 S.E.2d 655, 659 (2005) (emphasis omitted). We may not extend the import of the phrase beyond its obvious meaning. *See Britt Construction,* 271 Va. at 62–63, 623 S.E.2d at 888; *Peacock,* 38 Va.App. at 248–49, 563 S.E.2d at 372.

FELTON, C.J., dissenting.

I respectfully dissent for the following reasons.

The record reflects claimant was employed as a plant mechanic prior to his unjustified refusal of selective employment. He sustained a compensable injury on January 31, 2001, five months after he submitted an application for early retirement. He returned to work the day following his injury and continued to perform light-duty tasks until he retired May 1, 2001. During that time, claimant received temporary partial disability wage-loss benefits at a rate of $161.10 per week. After claimant's voluntary retirement, employer continued to pay claimant temporary partial disability wage-loss benefits through July 13, 2003.[5] On or around that date, employer discovered that claimant had accepted employment as a sales associate with a friend's seafood company on March 10, 2003, some twenty months after his voluntary retirement,[6] earning $200 per week. Claimant testified that he failed to notify employer of his new employment because he "didn't see where it was anybody's business."

As the majority notes, claimant does not dispute on appeal that his voluntary retirement constituted an unjustified refusal of selective employment. It is well-settled that "[i]f an injured employee unjustifiably refused selective employment offered by the employer, he or she is 'no longer entitled to receive [wage-loss benefits] during the continuance of the refusal.'" *ARA Services v. Swift*, 22 Va.App. 202, 206, 468 S.E.2d 682, 684 (1996) (citing *Virginia Wayside Furniture, Inc. v. Burnette*, 17 Va.App. 74, 78, 435 S.E.2d 156, 159 (1993); Code § 65.2–510(A)). However, the injured employee is entitled to a reinstatement of such benefits if he cures his unjustified refusal of selective employment, *Food Lion, Inc. v. Newsome*,

---

**5.** Employer did not file an application for hearing to terminate claimant's wage-loss benefits under Code § 65.2–510(A) during the period of time from claimant's voluntary retirement until it learned of his new employment.

**6.** The record is silent concerning claimant's effort, if any, to market his residual capacity during that period of time.

30 Va.App. 21, 25, 515 S.E.2d 317, 319 (1999), "within six months from the last day for which compensation was paid," Code § 65.2–510(C). Adopting claimant's argument that Code § 65.2–510(B) [7] permits an injured employee to partially cure an unjustified refusal of selective employment by obtaining "any" alternate employment, the majority concludes "that claimant's acceptance . . . of selective employment paying $200 per week was sufficient under Code § 65.2–510(B) to partially cure his unjustified refusal of selective employment paying $1,002 per week." In my view, the majority disregards Code § 65.2–510(B)'s "suitable to his capacity" language, which I believe requires the opposite conclusion.

Claimant's argument on appeal raises a question of statutory construction. Although the Workers' Compensation Act "is highly remedial and should be liberally construed to advance its purpose . . . [of compensating employees] for accidental injuries resulting from the hazards of [ ] employment[,]" *Henderson v. Central Tel. Co.*, 233 Va. 377, 382, 355 S.E.2d 596, 599 (1987), "[t]hat liberality, however, has its limits." *Clinchfield Coal Co. v. Reed*, 40 Va.App. 69, 73, 577 S.E.2d 538, 540 (2003). "We are required to construe the law as it is written." *Peacock v. Browning Ferris, Inc.*, 38 Va.App. 241, 248, 563 S.E.2d 368, 372 (2002) (citation omitted). " 'Where the legislature has used words of a plain and definite import the courts cannot put upon them a construction which amounts to holding the legislature did not mean what it has actually expressed.' " *Barr v. Town & Country Props., Inc.*, 240 Va. 292, 295, 396 S.E.2d 672, 674 (1990) (quoting *Watkins v. Hall*, 161 Va. 924, 930, 172 S.E. 445, 447 (1934)). Thus, "[w]e are

---

7. Code § 65.2–510(B) provides:

If an injured employee cures his unjustified refusal by accepting employment *suitable to his capacity* at a wage less than that originally offered, the employer shall pay or cause to be paid to the injured employee during his partial incapacity pursuant to Code § 65.2–502, a weekly compensation equal to 66 2/3 percent of the difference between his average weekly wages before his injury and the average weekly wage the employee would have earned by accepting the original proffered light duty employment.

(Emphasis added).

not authorized to amend, alter or extend the ... Act's provisions beyond their obvious meaning." *Peacock*, 38 Va.App. at 248–49, 563 S.E.2d at 372.

The majority concludes that our decision in *Hillcrest Manor Nursing Home v. Underwood*, 35 Va.App. 31, 542 S.E.2d 785 (2001), is applicable to claimant's case because "claimant did just what we spoke of in *Hillcrest Manor Nursing Home*—he refused employer's offer of continued full-time selective employment, resigned in order to take voluntary retirement, and thereafter timely accepted selective employment with a different employer at reduced wages." I respectfully disagree. While we recognized in *Hillcrest Manor Nursing Home* that Code § 65.2–510(B) permits an injured employee to "partially cure" an unjustified refusal of selective employment by obtaining alternate employment at a reduced wage, we did not address the statutory provision's requirement that an employee's alternate employment must be "suitable to his capacity." In my view, Code § 65.2–510(B)'s "suitable to his capacity" language was not at issue in *Hillcrest Manor Nursing Home* because the same tasks the employee performed in the part-time position were identical to those to be performed in the offered full-time selective employment, only at a reduced wage. 35 Va.App. at 38, 542 S.E.2d at 788. Therefore, her alternate employment was clearly suitable to her residual capacity for work.

Claimant's alternate employment selling seafood at a substantially reduced wage did not require him to perform tasks comparable to those he performed during his selective employment as a plant mechanic. Consequently, Code § 65.2–510(B)'s "suitable to his capacity" language, in my view, must be considered in determining whether claimant's employment selling seafood partially cured his unjustified refusal of selective employment. *See Barr*, 240 Va. at 295, 396 S.E.2d at 674 ("We must ... assume that the legislature chose, with care, the words it used when it enacted the ... statute, and we are bound by those words as we interpret the statute.").

In interpreting Code § 65.1–63,[8] an earlier version of Code § 65.2–510 containing substantially similar language, the Supreme Court defined employment "suitable to his capacity" as "employment within the employee's residual capacity resulting from the industrial accident." *American Furniture Co. v. Doane*, 230 Va. 39, 42, 334 S.E.2d 548, 550 (1985). Consistent with that definition, we held in *National Linen Service v. McGuinn*, 8 Va.App. 267, 380 S.E.2d 31 (1989), that "Code § 65.1–63 . . . clearly require[d] a disabled employee to make a 'reasonable effort' to market his remaining work capacity in order to receive continued workers' compensation benefits." *Id.* at 269, 380 S.E.2d at 33. Under former Code § 65.1–63, "the mere fact that the [injured] employee obtained a new job, where the pay is substantially less than that received at the old job, [was], standing alone, insufficient proof of making a reasonable effort to market's one's remaining work capacity." *Id.* at 268, 380 S.E.2d at 32.

"The General Assembly subsequently reenacted Code § 65.1–63 as Code § 65.2–510 and amended it to recognize the ability of an injured employee to [partially] cure a refusal of selective employment procured for him and to provide a time limit on the period in which an employee may do so." *M & S Auto Parts, Inc. v. Presgraves*, 45 Va.App. 455, 463, 611 S.E.2d 655, 659 (2005) (citing 1991 Va. Acts, ch. 355; 1995 Va. Acts, ch. 319; 1996 Va. Acts, ch. 252). "However, the General Assembly did not alter the basic purpose of the statute or the interpretation given it by our appellate courts." *Id.* In my view, the Supreme Court's definition of "suitable to his capacity" in *Doane* continues to be embodied in Code § 65.2–510's "suitable to his capacity" language.[9] I am also of the view

---

8. Former Code § 65.1–63, the predecessor to Code § 65.2–510, provided that, "[i]f an injured employee refuses employment procured for him *suitable to his capacity,* he shall not be entitled to any compensation at any time during the continuance of such refusal, unless in the opinion of the Industrial Commission such refusal was justified." (Emphasis added).

9. The "suitable to his capacity" language appearing in former Code § 65.1–63 currently appears in both subsection (A) and subsection (B) of Code § 65.2–510.

that the reenactment of Code § 65.1–63 as Code § 65.2–510, and the subsequent amendment of Code § 65.2–510 to include subsection (B) did not disturb our holding in *McGuinn* that temporary wage-loss benefits may be continued only where an injured employee secures suitable employment within his physical limitations or continues to market his residual work capacity. *See Burke v. Commonwealth*, 29 Va.App. 183, 188, 510 S.E.2d 743, 745–46 (1999) ("When new provisions are added to existing legislation by amendment, we presume that the legislature 'acted with full knowledge of and in reference to the existing law upon the same subject and the construction placed upon it by the courts.'" (quoting *City of Richmond v. Sutherland*, 114 Va. 688, 693, 77 S.E. 470, 472 (1913))).

In my view, a partial cure may be accomplished under Code § 65.2–510(B) by the injured employee either obtaining alternate employment that, although paying a reduced wage, is "suitable" to an injured employee's residual capacity for work, or, by accepting any alternate employment, regardless of its "suitability," and demonstrating a reasonable effort to market his full residual capacity for work.

Here, claimant worked for employer as a plant mechanic earning $1,243.64 per week. After sustaining a compensable back injury on January 31, 2001, he returned to light-duty work performing the same tasks, but with restrictions on lifting. Claimant remained on light duty with employer, earning $1,002 per week, until May 1, 2001, the date his voluntary retirement became effective. By continuing to work for employer for three months after sustaining his compensable injury, claimant established that the selective light-duty position was within his residual capacity for work. I find no credible evidence in the record that claimant's position selling seafood for $200 per week is "suitable to his capacity" for work as required by Code § 65.2–510(B). Moreover, the record before us contains no evidence of claimant's efforts to obtain alternate employment suitable to his residual work capacity or to market his residual work capacity for some twenty months following his voluntary retirement. It was only by chance that employer discovered that claimant had

obtained employment at his friend's business at a wage of $200 per week. It is difficult, in my view, on the record before us, to conclude that claimant cured, even partially, his refusal of selective employment—particularly in light of his failure to report his new employment to employer, and when asked why he had not reported it, he replied that, "I didn't see where it was anybody's business."

Accordingly, I would hold on this record that claimant failed to cure his unjustified refusal of selective employment under Code § 65.2–510(B), and would affirm the decision of the commission.