Tuesday                29th

January, 2008.

William C. Dowden, Jr.,                                                    Appellant,

 against            Record No. 1226-06-2
                   Claim No. 204-26-18

Hercules, Inc. and
  Aqualon Company,                                                       Appellees.

Upon a Rehearing En Banc

Before Chief Judge Felton, Judges Elder, Frank, Humphreys, Clements,
Kelsey, McClanahan, Haley, Petty and Beales

Stephen T. Harper (Kerns, Kastenbaum & Reinhardt, on brief),
for appellant.

Charles F. Midkiff (Angela F. Gibbs; Midkiff, Muncie &
Ross, P.C., on brief), for appellees.


By opinion dated May 8, 2007, a divided panel of this Court reversed and remanded the decision

of the Virginia Workers' Compensation Commission.  Dowden v. Hercules, Inc., 49 Va. App. 668, 644

S.E.2d 93 (2007).  On July 3, 2007, we granted rehearing en banc, vacated the panel opinion, and stayed

the mandate entered on that date.  Dowden v. Hercules, Inc., 50 Va. App. 111, 646 S.E.2d 463 (2007).

Upon rehearing en banc, this Court's May 8, 2007 mandate is withdrawn and the commission's

decision is reversed and remanded by unanimous vote of the full Court.  Judges Elder, Humphreys,

Clements, Petty and Beales vote to reverse and remand for the reasons stated in the separate opinion of

Judge Clements.  Chief Judge Felton, Judges Frank, Kelsey, McClanahan and Haley vote to reverse and

remand for the reasons stated in the separate opinion of Judge Kelsey.

This order shall be published and certified to the Virginia Workers' Compensation Commission.

A Copy,
                        Teste:
                                        Clerk

Opinion of Clements, J., with whom Elder, Humphreys, Petty and Beales, JJ., join.

William C. Dowden, Jr. (claimant) appeals a decision of the Virginia Workers' Compensation Commission (commission) terminating his temporary partial disability benefits because he did not timely cure his unjustified refusal of selective employment offered by Hercules, Inc. (employer). On appeal, claimant contends the commission erred in determining he did not partially cure his unjustified refusal of selective employment under Code § 65.2-510(B) when he timely procured selective employment paying less than the selective employment originally offered by employer. On May 8, 2007, a divided panel of this Court agreed with claimant and reversed the commission's decision. Dowden v. Hercules, Inc., 49 Va. App. 668, 644 S.E.2d 93 (2007). On July 3, 2007, we granted appellees' petition for a rehearing en banc, stayed the mandate of the panel decision, and reinstated the appeal. Upon rehearing en banc, we reverse the decision of the commission and remand.

## I. BACKGROUND

The relevant facts are not in dispute. Claimant began working for employer in 1969. After thirty years of employment, he voluntarily applied for early retirement on August 23, 2000, pursuant to a buy-out offer designed to assist employer in reducing its workforce. On January 31, 2001, while his application for early retirement was pending, claimant injured his back at work. Prior to his injury, claimant earned an average weekly wage of $1,243.64 per week. Upon returning to light-duty work with employer, he earned a wage of $1,002 per week. The commission subsequently awarded claimant temporary partial disability benefits from February 1, 2001, and continuing, at a rate of $161.10 per week.

After claimant returned to light-duty work, he was notified that his application for early retirement had been approved. Claimant accepted employer's offer of early retirement and retired effective May 1, 2001. Employer continued to pay claimant $161.10 per week in

temporary partial disability payments through July 13, 2003. On or around that date, employer discovered claimant had accepted employment as a sales associate with a friend's seafood company on March 10, 2003, earning $200 per week.

On July 24, 2003, employer filed an application with the commission seeking termination or suspension of claimant's award and credit for benefits paid from March 10, 2003, through July 13, 2003. Employer argued that claimant unjustifiably refused selective employment by voluntarily retiring and that he failed to cure his unjustified refusal. Claimant filed a change-in-condition application on September 5, 2003, seeking a continuation of his temporary partial disability wage-loss benefits of $161.10 per week. Claimant argued that he did not refuse selective employment when he retired, but, if the commission found he did, he cured that refusal on March 10, 2003, when he procured other selective employment.

Finding that claimant's voluntary retirement constituted an unjustified refusal of selective employment pursuant to Code § 65.2-510(A) and that claimant did not effectuate a cure within six months from the date of his retirement as required by Code § 65.2-510(C), the deputy commissioner granted employer's application and denied claimant's change-in-condition application. Upon review, the full commission agreed with the deputy commissioner that claimant unjustifiably refused selective employment when he voluntarily retired.[1] It disagreed, however, that Code § 65.2-510(C)'s six-month statute of limitations to cure the unjustified refusal began running on the date of claimant's retirement. Accordingly, the full commission remanded the case "for determination of the date the claimant's cure requirement began . . . and whether the claimant cured the unjustified refusal."

---

[1] Claimant does not challenge this determination on appeal. Accordingly, it is not before us here. Also not before us is the issue of whether taking voluntary retirement, in and of itself, would preclude a future cure.

- 3 -

On remand, the deputy commissioner determined that, because claimant failed "to report his return to work on March 10, 2003," Code § 65.2-510(C)'s six-month statute of limitations to cure claimant's unjustified refusal began to run on that date.[2] The deputy commissioner then found that claimant failed to cure his unjustified refusal by September 10, 2003, and, thus, was not entitled to temporary partial disability benefits beyond March 10, 2003. In reaching that decision, the deputy commissioner found that claimant's employment paying $200 per week did not cure his unjustified refusal of selective employment because it was not comparable to the employment paying $1,002 per week he had refused.

Appealing the deputy commissioner's decision to the full commission, claimant asserted that his return to work selling seafood on March 10, 2003, constituted a cure of his unjustified refusal of selective employment under Code § 65.2-510(B). He argued that Code § 65.2-510(B) did not require him to obtain employment at a wage "comparable" to the wage he would have earned had he continued the selective employment offered by employer.

A majority of the full commission disagreed with claimant, holding that the employment an injured worker procures "must be at a wage comparable to that of the previously refused position" to constitute a cure under Code § 65.2-510. Accordingly, the commission affirmed the deputy commissioner's decision that claimant failed to cure his unjustified refusal of selective employment, noting as follows: "The claimant was earning $1,002 per week in his selective employment, and after his refusal, he began earning $200 per week. The evidence does not indicate that the employment he procured was comparable and effectuated a cure of his unjustified refusal of selective employment."

This appeal by claimant followed.

---

[2] As the full commission noted, neither party contested this determination on review to the full commission.

II.  ANALYSIS

The sole issue on appeal is whether claimant's acceptance on March 10, 2003, of selective employment paying $200 per week was sufficient under Code § 65.2-510(B)[3] to cure his unjustified refusal of selective employment offered by employer paying $1,002 per week. Relying on this Court's decisions in Food Lion, Inc. v. Newsome, 30 Va. App. 21, 515 S.E.2d 317 (1999), and Clements v. Riverside Walter Reed Hospital, 40 Va. App. 214, 578 S.E.2d 814 (2003), the commission concluded that claimant's procurement of the $200-per-week selective employment was not sufficient to cure his unjustified refusal because the wage he earned at that employment was not comparable to the wage he earned at the selective employment offered by employer.  We hold that our decision in Hillcrest Manor Nursing Home v. Underwood, 35 Va. App. 31, 542 S.E.2d 785 (2001), and the express language of Code § 65.2-510(B) control the outcome of this case and require the opposite conclusion.

It is well settled that an injured employee who unjustifiably refuses selective employment offered by the employer is not "entitled to receive disability compensation during the continuance of the refusal." Virginia Wayside Furniture, Inc. v. Burnette, 17 Va. App. 74, 78, 435 S.E.2d 156, 159 (1993); see Code § 65.2-510(A).  However, "once an employee has cured an unjustified refusal of selective employment, he . . . is entitled to reinstatement of benefits," Newsome, 30 Va. App. at 25, 515 S.E.2d at 319 (citing Code § 65.2-510), as long as the cure is effectuated within "six months

---

[3] Code § 65.2-510(B) provides as follows:

> If an injured employee cures his unjustified refusal by accepting employment suitable to his capacity at a wage less than that originally offered, the employer shall pay or cause to be paid to the injured employee during his partial incapacity pursuant to § 65.2-502, a weekly compensation equal to 66 2/3 percent of the difference between his average weekly wages before his injury and the average weekly wage the employee would have earned by accepting the original proffered light duty employment.

- 5 -

from the last day for which compensation was paid before suspension pursuant to [Code § 65.2-510(A)]," Code § 65.2-510(C).  The calculation of the employee's benefits following a timely cure depends on whether he fully cured the unjustified refusal or only partially cured it.  Compare Newsome, 30 Va. App. at 25-26, 515 S.E.2d at 319-20 (addressing compensation following a full cure under Code §§ 65.2-510 and 65.2-502), with Hillcrest Manor Nursing Home, 35 Va. App. at 37, 39, 542 S.E.2d at 788, 789 (addressing compensation following a partial cure under Code § 65.2-510(B)).

A full cure occurs when the injured employee procures "other selective employment at a wage equal to or greater than" the wage of the refused selective employment.  Newsome, 30 Va. App. at 23, 26, 515 S.E.2d at 318, 320.  If the employee fully cures his unjustified refusal, he is entitled to "a weekly compensation equal to 66 2/3 percent of the difference between his average weekly wages before the injury and the average weekly wages . . . *he is able to earn thereafter*."  Code § 65.2-502 (emphasis added); see Newsome, 30 Va. App. at 25, 515 S.E.2d at 319 ("Once an employee cures an unjustified refusal of employment, Code § 65.2-510 returns the parties to their pre-refusal status, and Code § 65.2-502 obligates the employer to pay partial incapacity benefits.").  Accordingly, we held in Newsome that, although the injured employee was unemployed for seven-and-one-half weeks during the post-refusal period for which he sought compensation, because he had already fully cured his refusal and marketed his full residual work capacity during the period of unemployment, the employer's liability was not limited "to the difference between [the employee's] refused selective employment wage and his pre-injury wage."  30 Va. App. at 25-26, 515 S.E.2d at 319-20.  In other words, having fully cured his refusal of selective employment, the employee was entitled to compensation for a full cure under Code § 65.2-502(A), rather than compensation for a partial cure under Code § 65.2-510(B).

A partial cure occurs when the injured employee procures other selective employment "'at a wage less than that originally offered'" by the employer. Hillcrest Manor Nursing Home, 35 Va. App. at 37, 39, 542 S.E.2d at 788, 789 (quoting and citing Code § 65.2-510(B)). If the employee partially cures his unjustified refusal, he is entitled to "a weekly compensation equal to 66 2/3 percent of the difference between his average weekly wages before his injury and the average weekly wage the employee would have earned by accepting the original proffered light duty employment." Code § 65.2-510(B); see Hillcrest Manor Nursing Home, 35 Va. App. at 37, 39, 542 S.E.2d at 788, 789. Accordingly, the employer's liability under Code § 65.2-510(B) is not based on the difference between the employee's pre-injury wage and the wage he could or does earn, but rather on the difference between his pre-injury wage and the wage he would have earned had he not refused the selective employment offered by the employer. This approach does not defeat the purposes of Code § 65.2-510—to the contrary, it encourages the injured employee to return to work, any work, and limits the employer's liability to the same liability it would have had if the employee had not refused the employer's offer of selective employment.[4] See Big D. Homebuilders v. Hamilton, 228 Va. 378, 382, 322 S.E.2d 839, 841 (1984) ("The legislative intent [of Code § 65.1-63 (recodified as Code § 65.2-510)] is to encourage injured employees to seek selective employment rather than to remain unemployed . . . ."); Food Lion, Inc. v. Lee, 16 Va. App. 616, 619, 431 S.E.2d 342, 344 (1993) ("Code § 65.2-510 was enacted . . . to encourage employers to procure employment suitable to partially incapacitated employees.").

Nothing in Code § 65.2-510(B) limits the application of that subsection to only injured employees who procure selective employment at wages comparable to the wages they would have earned had they not refused the originally offered selective employment. See Britt

---

[4] Indeed, an employer that offers an injured employee selective employment at a wage equal to or greater than the employee's pre-injury wage would have no liability under the partial cure provisions of Code § 65.2-510(B).

- 7 -

Construction v. Magazzine Clean, LLC, 271 Va. 58, 62-63, 623 S.E.2d 886, 888 (2006) ("When statutory language is unambiguous, we are bound by the plain meaning of that language. Therefore, when the General Assembly has used words of a definite import, we cannot give those words a construction that amounts to holding that the General Assembly meant something other than that which it actually expressed." (citations omitted)). Indeed, the only wage-related provision that limits Code § 65.2-510(B)'s application is the subsection's express requirement that the wage of the selective employment procured by the employee be "less than that originally offered" by the employer. Thus, contrary to the commission's conclusion, an employer may not escape liability for workers' compensation benefits under Code § 65.2-510(B) simply because the employee procures selective employment that pays substantially less than the selective employment offered by the employer.[5] See Peacock v. Browning Ferris, Inc., 38 Va. App. 241, 248, 563 S.E.2d 368, 372 (2002) ("[W]e will withhold the deference we normally accord the commission's statutory interpretation of the Workers' Compensation Act when the commission's

---

[5] Nor do we find anything else in Code § 65.2-510(B) that precludes the application of that subsection to claimant in this case. As set out in his attached opinion, Judge Kelsey reads Code § 65.2-510(B)'s "employment suitable to his capacity" language as permitting a partial cure only where an injured employee procures employment that makes maximum use of his remaining vocational skills, thereby prohibiting a surgeon, for example, from effecting a partial cure by taking a job at a convenience store. However, the phrase "employment suitable to his capacity" has been defined by our Supreme Court as meaning nothing more, in the context of the Workers' Compensation Act, than "employment within the employee's residual capacity *resulting from the industrial accident*." American Furniture Co. v. Doane, 230 Va. 39, 42, 334 S.E.2d 548, 550 (1985) (emphasis added). In other words, the phrase simply refers to employment that does not exceed the partially disabled employee's work restrictions and limitations caused by the compensable injury, and is often used interchangeably with such terms as "selective employment," see, e.g., id. at 42-43, 334 S.E.2d at 550, and "suitable light-duty [employment]," see, e.g., M & S Auto Parts, Inc. v. Presgraves, 45 Va. App. 455, 464, 611 S.E.2d 655, 659 (2005) (emphasis omitted). We may not extend the import of the phrase beyond its obvious meaning. See Peacock v. Browning Ferris, Inc., 38 Va. App. 241, 251, 563 S.E.2d 368, 373 (2002) ("[Courts may not] extend the Workers' Compensation Act's provisions beyond their obvious meaning . . . [nor] hold that the legislature did not mean what it actually expressed. If such a change is to be made, it is for the legislature to undertake, not us.").

interpretation conflicts with the plain language of the statute."); Hillcrest Manor Nursing Home, 35 Va. App. at 39-40, 542 S.E.2d at 789 (applying Code § 65.2-510(B)).

In Hillcrest Manor Nursing Home, the claimant suffered a compensable injury by accident that limited her work capacity and prevented her from continuing in her full-time, full-duty position. 35 Va. App. at 34-35, 542 S.E.2d at 787. The employer offered the claimant part-time selective employment, which the claimant accepted. Id. at 35, 542 S.E.2d at 787. Thereafter, the employer offered the claimant full-time selective employment, which the claimant unjustifiably refused. Id. at 35-36, 38, 542 S.E.2d at 787, 789. The claimant continued to work part-time for the employer and took no apparent steps to market her full residual work capacity. Id. at 35-36, 542 S.E.2d at 787. Considering the claimant's request for benefits for the period following her refusal of the full-time selective employment, the commission determined that the claimant "partially cured her . . . [unjustified] refusal of full-time selective employment by simply continuing the part-time, light duty work that predated the offer" of full-time employment. Id. at 39, 542 S.E.2d at 789. "[T]he commission reasoned that, 'although it was the claimant's decision to work the reduced hours, the effect was the same as if she, in an attempt to cure, had obtained alternate employment at a reduced wage.'" Id. Thus, the commission awarded the claimant partial disability benefits "pursuant to Code § 65.2-510(B)." Id. We affirmed the commission's judgment, noting as follows:

> *If claimant had refused the offer of full-time employment, resigned and thereafter immediately accepted part-time, light duty work with employer or elsewhere, at reduced wages, she would have partially cured such refusal.* Likewise, continued part-time, selective employment with [the employer], following the full-time offer, constituted a partial cure of her prior unjustified refusal of such employment within the intendment of Code § 65.2-510(B). A contrary result would deny benefits under circumstances evincing little substantive difference in conduct, thereby thwarting the purposes of the Workers' Compensation Act . . . . Accordingly, the commission correctly determined that "claimant would still be entitled to temporary benefits based on the difference between her

- 9 -

> pre[-]injury average weekly wage and the wage she would have
> earned had she accepted [the] full-time hours."

Id. at 39-40, 542 S.E.2d at 789 (emphasis added).

In this case, claimant did just what we spoke of in Hillcrest Manor Nursing Home—he refused employer's offer of continued full-time selective employment, resigned in order to take voluntary retirement, and thereafter timely accepted selective employment with a different employer at reduced wages. Accordingly, we hold that Hillcrest Manor Nursing Home is applicable to this case and requires the conclusion that claimant partially cured his refusal of selective employment under Code § 65.2-510(B).

Moreover, we are aware of no controlling precedent since Code § 65.2-510(B)'s enactment in 1995 that supports the commission's conclusion that claimant did not partially cure his unjustified refusal of selective employment under Code § 65.2-510(B) because the position he procured was not "at a wage comparable to that of the previously refused position." As noted above, Newsome was decided under the full cure provisions of Code §§ 65.2-510 and 65.2-502. See 30 Va. App. at 26, 515 S.E.2d at 320 ("[B]ecause Newsome properly cured his refusal of selective employment, as long as he fully markets his residual capacity, we find no authority to limit the employer's liability to the difference between Newsome's refused selective employment wage and his pre-injury wage."). In Clements, we cited Code § 65.2-510(B) and Hillcrest Manor Nursing Home for the proposition that a claimant may "partially cure a refusal" but expressly stated in a footnote that the claimant in that case "never argued that she partially cured her refusal." 40 Va. App. at 225 & n.7, 578 S.E.2d at 819 & n.7. Similarly, we expressly noted in Metropolitan Washington Airport Authority v. Lusby, 41 Va. App. 300, 315 n.8, 585 S.E.2d 318, 325 n.8 (2003), that, although Code § 65.2-510 "was amended in 1995 to allow for a 'partial' cure[, it was] clear from the full commission's opinion that it proceeded under the former statute, which was in effect at the time of [the claimant's] injury, because it [did] not

- 10 -

contemplate or consider partial cure as a basis for recovery in [the] case." Thus, none of these cases was decided under the partial cure provisions of Code § 65.2-510(B).

We hold, therefore, pursuant to <u>Hillcrest Manor Nursing Home</u> and the express language of Code § 65.2-510(B), that claimant's acceptance on March 10, 2003, of selective employment paying $200 per week was sufficient under Code § 65.2-510(B) to partially cure his unjustified refusal of selective employment paying $1,002 per week. Consequently, having timely partially cured his unjustified refusal of selective employment, claimant was entitled to a continuation of his temporary partial disability wage-loss benefits in accordance with Code § 65.2-510(B).

### III.  CONCLUSION

For these reasons, we reverse the commission's decision and remand this case for further proceedings consistent with this opinion.

<u>Reversed and remanded.</u>

Opinion of Kelsey, J., with whom Felton, C.J., and Frank, McClanahan and Haley, JJ., join.

William C. Dowden, Jr., appeals a decision of the Workers' Compensation Commission concluding that he failed to cure his refusal of selective employment following his workplace injury. After a panel of this Court reversed and remanded, Dowden v. Hercules, Inc., 49 Va. App. 668, 644 S.E.2d 93 (2007), we vacated the panel decision and agreed to consider the matter *en banc*. For the following reasons, we hold the commission used an incorrect legal standard to determine whether Dowden cured his refusal of selective employment. We reverse the commission's decision and remand the case for further factfinding under the correct standard.

I.

Dowden worked as a mechanic for many years with Hercules, Inc. In 2000, he applied for early retirement. While the application was pending, Dowden injured his back at work. After his accident, Dowden returned to work with Hercules in a light-duty job earning $1,002 a week, about $241 less than his pre-injury weekly wage. The commission awarded Dowden $161 a week in temporary partial benefits. Several months later, Hercules approved Dowden's early retirement application. Dowden retired in May 2001. Despite Dowden's retirement, Hercules continued to pay him $161 a week in compensation benefits.

In 2003, Dowden starting working for a friend's seafood company earning $200 a week. Hercules filed an application with the commission seeking a termination of benefits, arguing that Dowden failed to mitigate his damages by quitting his light-duty job. Dowden's position with his friend's seafood company, Hercules argued, did not cure his earlier decision to quit his light-duty job. The commission agreed that Dowden's early retirement amounted to an unjustified refusal of "selective employment" and he did not "cure" that refusal by taking the *de minimis* job with his friend's seafood company. Code § 65.2-510(A) & (B). The commission concluded the $200-a-week job could not be a statutory cure because the job was not "at a wage comparable to

- 12 -

that of the previously refused position." Dowden v. Hercules, Inc., No. 204-26-18, 2006 Va. Wrk. Comp. LEXIS 280, at *7 (Apr. 25, 2006). While the wages of a cure job need not be "identical" to those of the refused job, the commission reasoned, "they certainly must closely approximate them." Id.

II.

On appeal, Dowden argues that the commission misinterpreted Code § 65.2-510(B). As a matter of law, Dowden contends, *any* job paying *any* wage constitutes a "cure" job under Code § 65.2-510(B). Under his view, Dowden concedes, even a job paying $1 a week would suffice. Hercules, on the other hand, defends the commission's reasoning in full. Only a cure job paying wages that "closely approximate" the refused job satisfies Code § 65.2-510(B). We agree with neither position.

The duty to mitigate damages represents a universal maxim adopted by every branch of law in one form or another. Workers' compensation law is no exception. A partially disabled worker cannot use his misfortune as an excuse to malinger or to semi-retire at his former employer's expense. One who has "voluntarily removed himself from the labor market" cannot obtain wage loss benefits. Crystal Oil Co. v. Dotson, 12 Va. App. 1014, 1022, 408 S.E.2d 252, 255 (1991). The injured worker must make reasonable efforts to find — and, if he does find, to take — suitable employment within his capacities. See Virginia Natural Gas, Inc. v. Tennessee, 50 Va. App. 270, 282-85, 649 S.E.2d 206, 212-14 (2007); Nat'l Linen Serv. v. McGuinn, 8 Va. App. 267, 272, 380 S.E.2d 31, 34 (1989). If he fails to do so, all compensation benefits will be suspended until he does. Id.

Code § 65.2-510 regulates just one aspect of the duty to mitigate: the consequences of refusing a mitigation job offered by the former employer hoping to get the injured worker back to work and to thereby moot the need for all or part of the continuing compensation benefits. If

the mitigation job qualifies as employment "suitable to his capacity," Code § 65.2-510(A), the injured worker must take the job unless some reason justifies his refusal to do so. If he unjustifiably refuses to take the mitigation job, compensation benefits are suspended. Id.

The suitable-to-his-capacity qualification in subsection A defines the scope of the injured worker's mitigation duty. A mitigation job is not suitable if the worker's injuries limit his physical ability to do the work. A mechanic with a hand injury, therefore, does not breach his mitigation duty by refusing a job that requires full use of both hands. For the same reason, a mitigation job can be unsuitable if the worker can physically do the job, but the job itself is beyond his vocational abilities — as when an injured mechanic with full use of his hands is offered a mitigation job as a surgeon. The surgeon's job is not "suitable" for a mechanic, and thus, Code § 65.2-510(A) would place no duty on the mechanic to take a job he obviously cannot perform.

The same suitability principle operates in the inverse. An injured surgeon with a physical impairment that affects only the number of hours he can work (but nothing else) could not be offered a mitigation job as a part-time clerk at a convenience store. He may have the physical capacity needed for the job, but he would not be at risk of losing his right to compensation benefits if he refused to take a job so demonstrably beneath his vocational capacities. Such a job would be too far below the surgeon's vocational potential to be considered a *bona fide* offer of selective employment. The suitability qualification in Code § 65.2-510(A), therefore, serves both as a ceiling and a floor for the range of mitigation jobs that can be offered to an injured worker. Whether a job is "suitable" under subsection A necessarily depends on the worker's physical as well as vocational capacities.

Subsection B of Code § 65.2-510 uses exactly the same language — employment "suitable to his capacity" — to determine when an injured worker who has violated subsection

- 14 -

A's duty to mitigate has cured this breach. Under subsection B, "an injured employee cures his unjustified refusal by accepting employment *suitable to his capacity* at a wage less than that originally offered . . . ." (Emphasis added.) If the injured worker misses his first opportunity at a mitigation job (and, as a consequence, loses his compensation benefits), he may restore the benefits in part by taking a different job at a lower wage.[6] The putative cure job, however, must also be "suitable to his capacity." Code § 65.2-510(B).

Under subsection B, suitability will rarely act as a ceiling because an injured worker will not likely take a job he knows he is ill equipped to keep. But suitability plays an important role in setting the vocational floor, below which the cure job cannot go. So, if an injured surgeon unjustifiably refuses a mitigation job as a part-time surgeon and loses compensation benefits based upon his prior job as a full-time surgeon, he cannot "cure" that breach of the mitigation duty by taking a job as a part-time convenience store clerk. For the same reason he could have refused the convenience store clerk job as unsuitable had it been offered to him by his former employer under subsection A, the employer can refuse the exact same job as unsuitable when offered by the injured surgeon as a cure.

_____

[6] The "cure" under Code § 65.2-510(B) involves suitable employment "at a wage less than that originally offered" by the employer under subsection A. From the injured worker's perspective, therefore, a subsection B job will always be a partial cure. No matter what the wage of the cure job, the worker's compensation benefits are still calculated at "66 2/3 percent of the difference between his average weekly wages before his injury and the average weekly wage the employee would have earned by accepting the original proffered light duty employment." Code § 65.2-510(B). The General Assembly added subsection B to Code § 65.2-510 in 1995. See 1995 Va. Acts, ch. 319. The purpose of the new provision was to supersede caselaw that calculated the post-cure benefits for wage loss based upon the cure-job wages, rather than (as subsection B now requires) the refused-job wages. See, e.g., Virginia Wayside Furniture, Inc. v. Burnette, 17 Va. App. 74, 80, 435 S.E.2d 156, 160 (1993); Vernon v. Hampton Roads Sanitation Dist., No. 129-91-70, 1989 Va. Wrk. Comp. LEXIS 55 (Aug. 22, 1989); Lawhorne v. H.F. Interiors, Inc., No. 132-13-73, 1989 Va. Wrk. Comp. LEXIS 51 (Feb. 15, 1989); Ward v. Rappahannock Gen. Hosp., No. 105-63-43, 1984 Va. Wrk. Comp. LEXIS 100 (May 3, 1985).

It follows, then, that the statutory requirement in subsection B that the employment be "suitable" to the injured worker's capacities means the same thing as the identical requirement in subsection A. To be suitable, the employment cannot be more than the injured worker can be expected to perform or demonstrably less than he can be expected to perform. The text of subsection B confirms this conclusion by calculating the worker's post-cure disability benefits "pursuant to § 65.2-502." Code § 65.2-510(B). Code § 65.2-502(A) specifically computes the worker's lost wage claim based upon what he earned before the accident and what he "is *able* to earn thereafter." (Emphasis added.) A worker's *ability* to earn wages necessarily takes into account his physical as well as vocational capacities.

For these reasons, we reject both Dowden's and the commission's interpretation of Code § 65.2-510(B). Coming from opposite analytical extremes, each interpretation involves a monocular focus on the issue of wages. The question is not simply whether the cure job pays *any* wage (which could be as little as $1 a week, as Dowden argues) or even whether it pays a less, but still *comparable*, wage (which "must closely approximate" the wage of the refused job, as the commission held). The question involves a far broader set of circumstances for the factfinder to consider. No itemized list of suitability factors appears in the workers' compensation statute. But the General Assembly, in an analogous provision of the unemployment compensation statute, left no doubt as to the relevant considerations:

> In determining whether or not any *work* is *suitable for an individual*, the Commission shall consider the degree of risk involved to his health, safety and morals, his physical fitness and prior training, his experience, his length of unemployment and the accessibility of the available work from his residence.

Code § 60.2-618(3)(b) (emphasis added); see generally 4 Larson's Workers' Compensation Law § 85.01, at 85-1 - 85-3 (2005) (noting that workers' compensation cases "resemble in general

effect the more numerous unemployment cases" addressing a claimant who "has refused suitable work").[7]

The definition of suitability under the unemployment compensation statute closely tracks the considerations governing an injured worker's duty to market his residual capacity under the workers' compensation statute, which requires the injured worker to look for "suitable employment *commensurate with his abilities*." Newport News Shipbuilding and Dry Dock Co. v. Lawrence, 38 Va. App. 656, 664, 568 S.E.2d 374, 378 (2002) (citation omitted and emphasis added). This formulation of "residual capacity" takes into account the "nature and extent" of the injured worker's physical impairments; his "training, age, experience, and education;" his discernible "intent" in finding *bona fide* work; the availability of employment in his job market; and any "other matter" affecting his ability to find suitable employment. Metro. Washington Airports v. Lusby, 41 Va. App. 300, 317, 585 S.E.2d 318, 326 (2003) (quoting Nat'l Linen Serv., 8 Va. App. at 272, 380 S.E.2d at 34). Even when an injured worker's marketing effort lands him a job, he still cannot satisfy his mitigation duty if the job is demonstrably below his full residual capacity. See Virginia Natural Gas, Inc., 50 Va. App. at 282-85, 649 S.E.2d at 212-14.

To be sure, the definition of residual capacity brings us full circle to the injured worker's duty to cure under Code § 65.2-510 because "employment 'suitable to [the employee's] capacity'

---

[7] While the definitions of phrases in one statute cannot be carried over thoughtlessly into another, where the legislative goals of the two statutes are similar, courts necessarily consider whether a *pari materia* construction would best reflect the intent of the legislature:

> In the construction of statutes, the courts have but one object, to which all rules of construction are subservient, and that is to ascertain the will of the legislature . . . and construing all statutes *in pari materia* in such manner as to reconcile, if possible, any discordant feature which may exist, and make the body of the laws harmonious and just in their operation.

Lucy v. County of Albemarle, 258 Va. 118, 131, 516 S.E.2d 480, 486 (1999) (citations omitted).

*means* employment within the employee's *residual capacity* resulting from the industrial accident." Am. Furniture Co. v. Doane, 230 Va. 39, 42, 334 S.E.2d 548, 550 (1985) (emphasis added); see also Ballweg v. Crowder Contracting, 247 Va. 205, 209, 440 S.E.2d 613, 615 (1994) (requiring cure job be suitable to the worker's "residual capacity"); Talley v. Goodwin Bros., 224 Va. 48, 52, 294 S.E.2d 818, 820-21 (1982) (asking whether the job was within the worker's "residual capacity"). When the mitigation duty involves *looking* for a job, the definition of residual capacity requires a broad factual examination of the worker's physical and vocational capacities. Exactly the same can be said when the mitigation duty involves *getting* a job. Residual capacity, therefore, means the same thing in both contexts.

Neither Dowden's nor the commission's interpretation of Code § 65.2-510(B)'s suitability requirement is fully consistent with these principles. Dowden's any-job-will-do interpretation falls far short of the full meaning of residual capacity. The commission's interpretation, on the other hand, collapses residual capacity into a single factor — whether the wages of the putative cure job "closely approximate" the wages of the refused job. Suitability under Code § 65.2-510 requires an examination of the injured worker's residual capacity. See Am. Furniture Co, 230 Va. at 42, 334 S.E.2d at 550; see also Ballweg, 247 Va. at 209, 440 S.E.2d at 615. Whether a particular job constitutes "suitable selective employment" presents a "question of fact" to be determined under the circumstances of each case. Gallahan v. Free Lance Star Pub. Co., 37 Va. App. 114, 118, 554 S.E.2d 685, 686 (2001) (examining suitability under Code § 65.2-510(A)).[8]

_____

[8] We also reject Dowden's reliance on Hillcrest Manor Nursing Home v. Underwood, 35 Va. App. 31, 542 S.E.2d 785 (2001). There, we merely recognized that Code § 65.2-510(B) permitted an injured worker to cure her unjustified refusal of an offer of full-time selective employment by continuing to work in part-time selective employment previously offered by the same employer. We did not address the statutory requirement that the cure job be "suitable" to the worker's capacity. That issue was never briefed, argued, or decided.

- 18 -

III.

In sum, the commission's use of an incorrect legal standard to determine the suitability of Dowden's job at his friend's seafood company truncated the factfinding task necessary under the correct legal standard.  We thus reverse and remand for the commission to consider all facts relevant to whether Dowden's job at his friend's seafood company at $200 a week was "employment suitable to his capacity" under Code § 65.2-510(B).  This fact-specific examination should take into account Dowden's physical and vocational capacities as well as any other consideration pertinent to his residual capacity for gainful employment.

Reversed and remanded.